HOSIC v. THE CHICAGO, ROCK ISLAND & PACIFIC
RAILWAY COMPANY.

| 75 | 683 |
| 75 | 18 |
| 76 | 390 |
| 75 | 683 |
| 83 | 630 |

1. **Railroads:** INJURY TO BRAKEMAN: DEFECTIVE APPLIANCES ;
CUSTOM NO EXCUSE. Plaintiff was one of defendant's brakemen,
and he sues for injuries received on account of defendant's negli-
gence in loading a flat-car with machinery, and placing it in the
train so that his duties required him to pass over it, without provid-
ing it with a foot-board so as to make such passage safe. *Held*
that there was evidence from which the jury were justified in find-
ing that defendant was negligent in not providing a foot-board,
and that the fact that such negligence was customary would not
relieve defendant from liability for its consequences.

| 75 | 683 |
| 88 | 414 |
| 75 | 683 |
| 493 | 242 |
| 75 | 683 |
| 98 | 551 |
| 75 | 683 |
| 128 | 487 |

2. ——: ——: ——: ASSUMPTION OF RISK. In such case, though plaintiff knew that defendant was accustomed to have cars so loaded without providing foot-boards, it was not shown to be usual to place such cars where brakemen were required to pass over them. Therefore it could not be said that he assumed the risk by accepting the service.

3. ——: ——: GOING ON DANGEROUS CAR: CONTRIBUTORY NEGLIGENCE: QUESTION FOR JURY. In such case, even if plaintiff knew, before going upon the car loaded with machinery and not provided with a foot-board, that an attempt to pass over it would be dangerous, he could not, as matter of law, be said to be guilty of contributory negligence in going upon it, for that was a question for the jury, and depended upon the nature of his duties, the urgency of the case, and the orders of his superiors, as shown by the evidence. (See opinion for cases distinguished).

*Appeal from Mahaska District Court.*—HON. J. K. JOHNSON, Judge.

FILED, MAY 10, 1888.

THIS is an action brought to recover for personal injuries alleged to have been caused by the fault of defendant. The case was tried to a jury, and a verdict returned for plaintiff. Judgment was rendered on the verdict, and defendant appeals.

*Thos. S. Wright* and *Lafferty & Johnson*, for appellant.

*John F. Lacey*, for appellee.

ROBINSON, J.—On the twenty-third day of November, 1883, plaintiff was in the employ of defendant as head brakeman on a freight train. He was about eighteen years of age, had been in the service of defendant for two months preceding the date named, and had acted as brakeman at different times for a year. At 12:45 o'clock in the morning of the day named, the train on which plaintiff was employed left Rock Island on its run through Sigourney to Oskaloosa. The train contained a platform-car, loaded with plows and other farming implements, which, at the time in question, was the second car from the engine. This car was not provided with a foot-board, and could be passed over

only by stepping on the implements with which it was loaded. As the train approached Sigourney, the plaintiff attempted to pass over this car to set a brake, and in so doing fell to the ground in such a manner that several car-wheels passed over his right arm, crushing it, and causing it to be amputated above the elbow. Plaintiff contends that his fall was due to the negligence of defendant in not providing the car in question with a suitable passage-way over its load.

I. It is claimed by appellant that the car from which plaintiff fell was loaded in the manner usual on its road, and that it was not customary at

1. RAILROADS: injury to brakeman: defective appliances: custom no excuse.

that time, and never had been, to place foot-boards over cars so loaded; that plaintiff knew these facts before he was employed by defendant; and that, by accepting service with that knowledge, he assumed all risks and hazards growing out of the manner of loading such cars without foot-boards. We understand that foot-boards, otherwise known as "running-boards," are placed lengthwise of the car, and above their loads, in such manner as to afford a convenient way for the use of brakemen in passing from one part of the train to another. Under the charge of the court, the jury must have found that defendant was negligent in not providing a foot-board for the car in question. This being true, the fact that such negligence was usual or customary would not relieve defendant from liability for its consequences. *Hamilton v. Des Moines Valley Ry. Co.*, 36 Iowa, 38. But we do not think the jury would have been justified in finding from the evidence that plaintiff

2. ——:——: ——: assumption of risk.

assumed the risk alleged by defendant. It is true that it was common for defendant to haul cars of agricultural implements which were not provided with foot-boards, but it was not shown to be usual to place such cars where the brakemen were required to pass over them in the discharge of their duties. On the contrary, the jury might well have found from the evidence that it was usual to place them near the middle of the train. As to whether it was the

rule of the defendant to provide cars like that in controversy with foot-boards, the evidence was conflicting, but the jury were justified in finding that it was negligence not to provide them.

II. Appellant insists that if appellee knew, before going onto the car from which he fell, that an attempt to pass over it would be dangerous, then he was negligent in making the attempt, and should not be permitted to recover in this action, for the reason that his own wrong contributed to the injury of which he complains. It is even suggested that plaintiff should have refused to go out with his train because it contained the car in question. Whether plaintiff was negligent in attempting to pass over the car does not depend entirely upon his knowledge of the danger involved, but rather upon all the circumstances of the case. It was not the duty of the plaintiff to refuse to go out with his train. When this left Rock Island, it was dark, and it is not shown that he knew there was no passage-way over the car in question until the moment of his going onto it at the time of the accident. We think the evidence shows that at that time he must have known the condition of the car, and is chargeable with knowledge that an attempt to pass over it would be dangerous. Will that fact defeat his recovery? Appellant insists that it will, and cites numerous decisions of this court in support of its position. But none of those decisions involve the principle of this case. In *Kroy v. Chicago, R. I. & P. Ry. Co.*, 32 Iowa, 358, the brakeman had attempted to uncouple a train while in motion. The attempt was not only dangerous, but was made without orders. It was not in the line of his duty, and was not sanctioned by any one having authority to direct the act to be done, and it was properly held that there could be no recovery for his death, which resulted from the unauthorized attempt.

In *Muldowney v. Ill. Cent. Ry. Co.*, 39 Iowa, 616, the plaintiff's intestate voluntarily undertook to make a

coupling while the cars were in motion. He was warned by some of the trainmen not to make the attempt, as it was dangerous. He could see that the warning was well founded, but persisted in the attempt, and was injured. It was not his duty to make the coupling at the time and in the manner attempted. Other cases cited by appellant involve the principle that, where an employe sustains an injury in consequence of defective railway appliances or appurtenances of which he had due notice, and where the injury results from an act of the injured person which he might have avoided, or which he was under no obligation to perform in the manner which led to the injury, then he cannot recover. But these cases have no application to this case. When the train approached Sigourney, plaintiff was riding on the engine. At the proper time for setting the brakes, he went onto the car next to the engine, and attempted to set a brake, but found it would not work. In order to reach a brake that could be used, it was necessary for him to pass over the car in question. Appellant insists that it was not necessary for him to set a brake; that the conductor had told him, a short time before, that he need not go on top of the train; that the train contained but few cars, and could be controlled with the brakes at the rear end; and that it was in fact so controlled. It is not claimed that plaintiff was ordered not to take his usual and proper station, and it is shown that this was at the forward end of the train. His duties included the setting of brakes at that end when required. He was at his proper station when the train approached Sigourney, and claims that it was then running at a higher rate of speed than was usual in approaching stations, and that the engineer gave the signal for brakes. This is disputed by appellant, but there was evidence tending to support the claim, and it was for the jury to determine the truth of the matter. It appears that it was not usual for the engineer to whistle for brakes when approaching a station, and that, when he did, it indicated that something was wrong with the track; that the train was going in too fast; that the brakemen were not doing

their duty, or something else which called for prompt action. The jury were told by the court that, in passing upon the question as to whether plaintiff was guilty of negligence contributing to his injury, they should consider among other things whether or not a signal for brakes was given, "and whether there was any necessity for setting the brakes on the forward end of the train." If the signal for brakes was given, or if plaintiff had good reason to believe the brakes should be set on his end of the train, what should he have done when he discovered that the brake on the first car would not work? Appellant seems to claim that he should have done nothing, for the reason that he could only set a brake by passing over the car in question, and that he could only do that by taking a dangerous risk. This does not appear to us to be a correct view of the case. The efficiency of the railway service, and the due protection of life and property, require prompt obedience to orders, and prompt discharge of duties, on the part of employes. And this is especially true in regard to the management of trains while in motion. It would not do to make the subordinate judge of the propriety of obeying an order, or to decide as to the necessity of discharging a duty. In this case it was the duty of plaintiff to obey the signal if one was given. If none was given, yet if, under the rules of the road, brakes should have been set on his end of the train, he was required to make due effort to set them, even though danger to himself was involved in the attempt. He was not responsible for the absence of the running-board, nor for the place the car occupied in the train. There was neither time nor opportunity to protest against passing over it. It is not claimed that he was negligent while on the car, but that he was in fault in going onto it. We do not think the fact that plaintiff attempted to pass over the car, with knowledge of its condition, ought to defeat his recovery. Whether he was negligent in fact was a question properly submitted to the jury. They found that he was not, and we are not disposed to disturb their verdict.

III. Appellant objects to various portions of the charge to the jury, and to the action of the court in refusing to give certain instructions asked by defendant. It is not necessary to consider these objections in detail. It is sufficient to say, in addition to what we have already said, that we discover no prejudicial error in any of the matters of which complaint is made.

