ST. LOUIS SOUTHWESTERN RAILWAY COMPANY OF TEXAS v.
ROLAND BRISCO.

No. 1590.   Decided February 20, 1907.

**1.—Master and Servant—Assumed Risk—Known Perils.**

The servant assumes the risk of injury from the known and customary manner of working by his fellow laborers, though that method of work be negligent.   (P. 358.)

**2.—Same.**

Where a railway section hand sued for injuries by the negligence of the other section hands engaged with him in putting a handcar on the track, in pushing the car upon him with unnecessary speed and violence, and there was evidence that the work was done in the usual manner, with which he was familiar, defendant was entitled to a requested charge that plaintiff assumed the risk if the car was moved in the usual manner and he was familiar therewith.   (Pp. 354–358.)

Question certified from the Court of Civil Appeals for the Fifth District, in an appeal from Hopkins County.

*E. B. Perkins* and *Templeton, Crosby & Dinsmore,* for appellant.— If the hand car on the occasion of the accident was moved by the section hands in the manner which theretofore had been usual and customary and plaintiff knew the ordinary manner and custom of the said hands theretofore in moving the car from the tool house to the track, then plaintiff assumed the risk whereby he was injured and the court erred in refusing to so instruct the jury.

*C. E. Sheppard,* for appellee.—The jury was required to find that the car was given "an unusual, quick and sudden push and shove forward toward plaintiff" and that he used "ordinary care" and "that it was not necessary or usual to so push said car in order to get the same on the track" before finding for plaintiff.   In substance that is all that is asked in this special charge.

BROWN, ASSOCIATE JUSTICE.—This is a certified question from the Court of Civil Appeals of the Fifth Supreme Judicial District.   The statement and questions are as follows:

"In the above entitled cause the following issues of law arise, which this court deems it advisable to present to the Supreme Court of the State of Texas for adjudication.

"Roland Brisco instituted this suit against the appellant railway company to recover damages on account of personal injuries alleged to have been received by him through the negligence of appellant's employes, while working as a section hand in assisting to remove a hand car from the tool house and place it on the track.   The railway company plead the general issue, contributory negligence and assumed risk.   Upon a trial verdict and judgment were rendered for appellee, and the railway company appeals.   The appellee's theory of recovery was negligence of employes in shoving the hand car with more force than usual

which caused it to run upon and injure appellee, who was pulling it; while that of the railway company was that the car was being moved in the usual manner and the appellee assumed the risk of its being so moved.

"Plaintiff alleged 'that in obedience to said command of said foreman, and in compliance with their duty, plaintiff and his said colaborers undertook to so remove said hand car from said tool house and place the same upon the main line; that in so doing plaintiff and Randolph Newsome took hold of said hand car in front or toward the main line and Robert Booze and two or three of the other hands took hold of the same at the rear or behind the car from the main line; that in so taking hold of said car it was the duty of the other hands to push the same forward onto the track. Plaintiff represents that he used due care in management of said car at said time, but that unexpectedly to him and without any warning whatever some of the parties who were pushing said car from behind gave the same an unusual, quick and violent push and shove forward toward this plaintiff, that he had at said time hold of said car pulling backward on the same as above alleged, and as it was his duty to do, and that when said violent push was made said hand car was suddenly and violently propelled against him with great and unnecessary speed, and without warning, and before he could get out of the way or do anything to avoid it the said hand car was run violently and with great force against him striking his leg, ankle and hip, pushing him backward and throwing him violently to the ground and running over his leg and ankle; that in being so pushed backward and being so struck by said car he stepped with his left foot between said guard rail and the main line rail of said track in trying to get out of the way of said car and got his said foot caught between said rails and so fastened that he could not extricate it owing to said car being propelled over and against him as aforesaid; that after he so got his foot caught as aforesaid said parties pushing said car, or some of them, continued to violently shove and push the same, thereby injuring him as hereafter alleged. That said parties who pushed said car over and against him as aforesaid did so negligently and without care as to plaintiff's safety, and that it was not at all necessary nor usual to do so for the purpose of putting said car upon the track, and that there were sufficient hands hold of said car to have easily put the same upon the track without injury to anyone by the use of ordinary care.' These allegations were substantially testified to by plaintiff's witnesses. It was shown that plaintiff had had some experience in handling hand cars, had for five or six years worked as a section hand, and knew there was danger of getting hurt in standing at the end of the car when they would shove it. Newsome testified that he took hold of the car at the end fronting towards the railroad track. Plaintiff also took hold of the same place and the other hands took hold at the other end. That was the way they had been pulling the car on the track. On the morning plaintiff was hurt 'we were putting the car on as we usually did, only the men at the back end shoved it harder than they had been doing.' They came out of the car house shoving it pretty fast. It was shown that Booze stated, 'I was aiming to put the damn thing on or put it in the ditch.' Lum Kay testified, in effect,

that they usually put the car in the tool house at night and would take it out of a morning. In putting it on the track they usually shoved it fast so as to get over the rail of the main track. 'We shoved the car fast that morning just like we did at all other times. We handled the car in putting it off and on twice a day and sometimes oftener. We gave the car a hard shove that morning, I could not tell any difference in the shove before we got to it and after we got to it. I said we shoved it hard at all times. I gave the car a grown man's shove, I gave it a grown man's shove every morning. I did so that morning and all the other mornings. I did not want to push the car over there and hurt the plaintiff.' Boyd testified, 'I was pushing the car with the other hands. In taking the car from the house onto the track we have to move it fast in order to get it over the first rail on the main track. They were moving the car pretty fast that morning, about like they always put it on. I only gave the car the shove as I usually did.' Holliday, foreman, testified: 'In taking the car from the house and putting it on the track they usually shoved it in order to make it jump the first rail. The object in shoving the car is to make it go over the first rail. When the tools are on it, it is usually heavy and they usually shove it pretty hard over the first rail.' Reed testified, 'We shove the car hard to make it go over the first rail, in order to keep from lifting it. Do not remember whether the car was going faster than usual or not that morning. My recollection was that it was going about as usual. If it was going any faster I was not paying any attention to it.'

"The court in affirmatively presenting plaintiff's case and after stating that if in pushing the car the colaborers 'gave the same an unusual, quick and sudden push and shove forward,' etc., further charged 'and if you believe that it was not necessary or usual to so push said hand car in order to get the same on the track,' . . . to find for plaintiff.

"The court also charged on contributory negligence and assumed risk as follows: 'But if you believe from the evidence that plaintiff voluntarily and unnecessarily placed himself near the frog or guard rail where he was injured, if he was injured, and in a position where his foot was liable to be caught therein; or if you believe that plaintiff voluntarily and unnecessarily got in front of said car as it was being rolled from the tool house to the track and carelessly caught at or caught hold of the car; and if you believe in doing all of said things, or either of them, if he did, he failed to exercise ordinary care as that term is above defined, and was guilty of negligence which caused or contributed to cause the injuries sustained by him, if any, then you will find for defendant."

" 'You are further instructed herein, that plaintiff in accepting and remaining in the employment of defendant as such hand thereby assumed all ordinary risks and dangers incident to the work in which he was engaged at the time he was injured, if he was injured; but that he did not thereby assume such risks and dangers as might result from the negligence of his fellow servants and coemployes while so engaged in said work, and if you believe that plaintiff was injured, in his ankle and knee as alleged, and that his said injuries, if any, were a result of the

dangers, if any, ordinarily incident to removing the hand car out of the tool house and rolling the same over the wooden track leading from the tool house to the track of defendant, at the place and under the circumstances that he and the other section hands did, then you will find for the defendant; but if you believe that said injuries to plaintiff, if any, were the result of the negligence of any of the employes of the defendant engaged in helping him remove said car from the tool house, and roll the same to and upon the track as alleged, if they did, you will find for the plaintiff under the instructions hereinbefore given you.'

"The railway company asked a special charge which was refused by the court, as follows: 'If you believe from the evidence that plaintiff was injured at the time and place and in the manner charged in the petition, and if you further believe that plaintiff's said injuries were caused by the rapid movement of the hand car from the tool house to the railway track at a point on the railway track where there was a switch and a guard rail or rails, and if you further believe that it was negligence, as that term has been defined to you, in the section hands to move the said hand car from the tool house to the railway track at that place with the speed it was moved and if you further believe from the evidence that at the time the plaintiff was injured he was an experienced section hand and knew, or might have known by the use of ordinary care, the risk and danger of moving the said hand car in the manner it was moved, and if you further believe that the said hand car at that time was moved by the section hands in the manner which theretofore had been usual, and customary with them, and if you believe that plaintiff at the time knew the ordinary manner and custom of the section hands theretofore in moving the said hand car from the tool house to the railway track, then plaintiff assumed all risk to himself of injuries by reason of the manner of moving the said car at that place, and defendant is not liable to plaintiff for any injuries received by him, and you will find for the defendant.'

"The members of this court are divided as to whether the evidence requires the giving of the special charge requested, and whether or not the principle announced in Gulf, C. & S. F. Ry. Co. v. Huyett, (92 S. W. Rep., 454), relating to assumed risk of customs, etc., of employes, or that of Houston & T. C. Ry. v. Turner (91 S. W. Rep., 562), aplies, and have thought it best to certify the following questions for your decision:

"Question 1.  In view of the evidence and the charge of the court was the defendant entitled to the requested charge and should it have been given?

"Question 2.  Does an employe connected with a particular work assume the risk of dangers arising from the usual and customary negligent manner of the doing of such work by his coemployes, when he is experienced in such work and knows, or must necessarily have known, of the usual and customary manner of doing said work?"

We answer both questions as follows: The court erred in not giving the charge set out in the statement submitted.  There was evidence from which the jury might have found that the hand car was uniformly

placed upon the track by giving it a hard push to get it over the first rail of the track. This was the method of doing the work and they might also have found that Brisco was daily engaged in assisting them put the car on the track as he was engaged on that occasion and knew of the manner in which his fellow servants uniformly performed that work. The jury might have found that the car on this occasion was shoved as it usually was and with no more force. The evidence is conflicting upon these issues, but the jury might have concluded that Brisco assumed the risk of putting the car on the track in the manner in which it was done. (Texas & P. Ry. Co. v. Bradford, 66 Texas, 732; Lynch v. Boston & A. Ry. Co., 159 Mass., 536; Hunt v. Kile, 98 Fed. Rep., 49; Red River Line v. Cheatham, 60 Fed. Rep., 517; Gulf, C. & S. F. Ry. Co. v. Harriett, 80 Texas, 83.)

One who is engaged in the performance of work in a manner well known to him must be held to assume the risks of dangers which are involved in the performance of the work in that way. There was no conflict in the testimony as to the fact that Brisco had been engaged in performing this character of work, that is, putting the car upon the track for some time; that he was experienced and had full knowledge as to the method in which the work was done. He was participating in the work on this occasion, and the facts bring it within the rule laid down by this court in Gulf, C. & S. F. Ry. Co. v. Huyett, 92 S. W. Rep., 454.

The difference between the case at bar and the case of Railway Co. v. Turner (91 S. W. Rep., 562) is that in the Turner case the injured party was not engaged in the work of switching the cars from which the injury occurred to him, but was engaged in a wholly independent business. He was not in a position to know at the time that the cars were being switched, as usual, in an unsafe and negligent way. The question of the assumption of risk depends largely upon the position of the party who is to be charged with such assumption with regard to his opportunity for knowing that at that time the thing to be done will be performed in the usual manner. If, knowing the usual method of doing the work and that it will be performed in that way, he participates in it, he will be held to assume the risk.