GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v. DORA MAY BERRY ET AL.

Decided October 31, 1907.

**1.—Charges—Submission of Issues—Construction.**

Where the court in one paragraph of its charge affirmatively submitted the facts necessary to be found by the jury before a verdict could be rendered in favor of plaintiffs, and in the next paragraph stated the facts which if found by the jury to exist, would entitle the defendant to a verdict, the charge was not subject to the objection that it was contradictory and confusing. In the construction of charges all parts of the charge must be construed together, including special charges given at the request of either party.

**2.—Same—Abstract Law—Application of Facts.**

It is a correct proposition that although the trial judge should give charges correctly stating the law on a given issue, if he fails to apply the same to the evidence the defendant has the right to prepare and have given a special charge requiring the jury to find whether the evidence establishes the existence of any specified group of facts which, if true, would in law establish a defense. But, special charge considered, and held to have no application to the facts of the case on trial, and therefore properly refused.

**3.—Death—Negligence—Evidence.**

In a suit for damages for the death of a switchman while engaged in the discharge of his duties in the yard of a railroad company, evidence considered, and held to support a finding that the defendant company was guilty of negligence, that the deceased was not guilty of contributory negligence, and that his death did not result from any risk that he assumed.

**4.—Negligence—Presumption.**

As the negligence of the master is never presumed, so the contributory negligence of the servant will not be presumed. Each must be proved.

**5.—Risk—Assumption of.**

The principle that a servant engaged in performing work in a manner known to him to be negligent must be held to have assumed the risk involved in per-

forming the work that way, is subject to the qualification that a servant does not assume the risk of a known negligent method unless he participated in it. Evidence considered, and held not to support the contention that the servant assumed the risk of the negligence which caused his death.

Appeal from the District Court of Harris County. Tried below before Hon. W. P. Hamblen.

*Baker, Botts, Parker & Garwood* and *Lane, Jackson, Kelley & Wolters,* for appellant.—In a case based on alleged negligence of the master, for injuries to a servant, which involves under the pleadings and the evidence issues of contributory negligence or assumed risk, it is error for the trial judge to submit a charge complete in itself, authorizing a recovery solely upon the hypothesis of the master's negligence, without reservation or reference to the issue of contributory negligence or assumed risk; and such error is not cured or removed by subsequent paragraphs of the charge submitting such issues, which merely contradict and confuse. Gulf, C. & S. F. Ry. Co. v. Albright, 7 Texas Civ. App., 24; Cannon v. Cannon, 66 Texas, 682; Linney v. Wood, 66 Texas, 24; Atwell v. Watkins, 13 Texas Civ. App., 675; Galveston, H. & S. A. Ry. Co. v. Le Gierse, 51 Texas, 202; San Antonio & A. P. Ry. Co. v. Robinson, 73 Texas, 284; Baker v. Ashe, 80 Texas, 360; International & G. N. Ry. Co. v. Welsh, 86 Texas, 207.

An experienced switchman who enters the service of a railway company and engages to perform the regular duties of such service upon the tracks in a certain yard, with which he is familiar, is held in law to understand the usual and established methods and practices of the service, and to have assumed the risk of such dangers as may be incident to the service as ordinarily performed in such yard, according to the established and usual methods thereof; and in the event of injury while so engaged in the performance of the service as a result of such ordinary incidents and methods, the master is not liable for such injury. Galveston, H. & S. A. Ry. Co. v. Gormley, 91 Texas, 401; Pilkinton v. Gulf, C. & S. F. Ry. Co., 70 Texas, 230; Missouri Pac. Ry. Co. v. Callbreath, 66 Texas, 528; Missouri Pac. Ry. Co. v. Watts, 63 Texas, 552; Missouri Pac. Ry. Co. v. Somers, 71 Texas, 701; Galveston, H. & S. A. Ry. Co. v. Lemp , 59 Texas, 22; Texas & Pac. Ry. Co. v. Bradford, 66 Texas, 733; Galveston, H. & S. A. Ry. Co. v. Drew, 59 Texas, 10; Rogers v. Galveston City Ry. Co., 76 Texas, 505; Galveston, H. & S. A. Ry. Co. v. Fowler, 56 Texas, 460; Texas & Pac. Ry. Co. v. French, 86 Texas, 98; Houston & T. C. Ry. Co. v. Conrad, 62 Texas, 628; Bailey on Master's Liability for Injury to Servants, pp. 458 et seq.; Wood on Master and Servant, sec. 326.

When there is no actual eye-witness to a fatal injury, and the circumstances surrounding the occurrence fail to indicate negligence on the part of the company, but raise the suspicion of contributory negligence, or suggest knowledge and assumption of risk on the part of the deceased, the court will not undertake to remove such suspicion and construct a theory to support recovery by basing one presumption upon another. Missouri Pac. Ry. Co. v. Foreman, 73 Texas, 314; Gulf, C. & S. F. Ry. Co. v. Shieder, 88 Texas, 162; Missouri Pac.

Ry. Co. v. Porter, 73 Texas, 307; Sabine & E. T. Ry. Co. v. Dean, 76 Texas, 74; Houston & T. C. Ry. Co. v. Conrad, 62 Texas, 628; Missouri Pac. Ry. Co. v. Williams, 75 Texas, 4.

The doctrine of contributory negligence is independent of the master's obligation to the servant with reference to the safety of the machinery and premises, and is not to be restricted by consideration of such duties on the part of the master. While the fact of the servant being engaged in his duty at the time of the injury is a circumstance that may be considered by the jury in determining whether his conduct was that of ordinary prudence, it does not excuse him from the exercise of that degree of care, and a special charge to this effect, applicable to the facts, was proper, and should have been given. Missouri Pac. Ry. Co. v. Williams, 75 Texas, 4; Houston & T. C. Ry. Co. v. Conrad, 62 Texas, 628; Galveston, H. & S. A. Ry. Co. v. Drew, 59 Texas, 13; Rogers v. Galveston City Ry. Co., 76 Texas, 504.

*Lovejoy & Parker,* for appellees.

McMEANS, Associate Justice.—The plaintiffs, Dora May Berry, who was the wife of William Berry, deceased, for herself and as next friend for her minor child, Millie May Berry, and joined by Callie Berry, mother of said deceased, sued the Galveston, Harrisburg & San Antonio Railway Company and the Texas & New Orleans Railroad Company for damages for personal injury, resulting in the death of said William Berry, while he was in the employment of defendants as switchman in the yards at Houston. It was alleged that the injury was caused by the negligence of defendants in that certain of their servants set several cars in motion in the darkness of the night through a portion of said yards where other servants and employes of defendants, including said Berry, were constantly engaged in the work of switching cars and other work in behalf of defendants, without any engine attached thereto, and without any lights thereon, and without any servant thereon to control the movement of said cars, or to give warning of their approach to any switchman or other employe who might be endangered thereby; and that the cars so set in motion ran over said Berry and inflicted such injuries upon him as to result in his death. On the trial it developed that Berry was in the employment of the Texas & New Orleans Railroad Company only, and the suit was abandoned as to the Galveston, Harrisburg & San Antonio Railway Company.

The defendants answered by (1) general demurrer; (2) general denial; (3) contributory negligence, in that William Berry voluntarily entered upon and remained on one of the tracks upon which cars were being moved when he knew, or by the exercise of ordinary care would have known, that said cars were being moved toward him, and that he failed to use ordinary care to discover the approach of said cars and to avoid their contact with him; and (4) assumed risk, in that the injury and death of said Berry resulted from risks and dangers which were ordinarily incident to the service in which the deceased was engaged, and that the risks and dangers were open and known to

him, and would have been known to and realized by him by the exercise of ordinary care in the performance of his duties as a switchman.

The trial resulted in a verdict for the plaintiffs, and defendant Texas & New Orleans Railroad Company appeals.

By its first assignment of error appellant complains that the fifth paragraph of the court's general charge was error, because the charge, being complete in itself, authorized a recovery solely upon the hypothesis of the master's negligence, without reservation or reference to the issue of contributory negligence or assumed risk, and that such error was not cured by subsequent paragraphs submitting such issues, which only served to contradict and confuse. The part of the charge complained of is as follows:

"If you believe, from a preponderance of the evidence, that . . . certain of the servants of defendant Texas & New Orleans Railroad Company, in the night time, set in rapid motion certain cars through a portion of defendant's yard, . . . where other of its servants, including William Berry, were engaged in the work of switching cars, without any engine attached thereto, and without any lights thereon, and without any servant thereon to control the movement of said cars and to give warning of their approach to any switchman in its employ who might be endangered thereby while in the discharge of his duty, if any such there were, and that said cars ran against said Berry and injured him so that as the result of the injury he thereafter . . . died; and you further believe, from a preponderance of the evidence, that the setting said cars in motion was negligence under the circumstances, and that the injury and death of said Berry was a natural and probable consequence of such negligence, if any, and was a result so manifest under the circumstances as that defendant and said servants, in the exercise under the circumstances of ordinary care should have anticipated and provided against same, you will return a verdict for plaintiff . . ."

Immediately following this portion of the charge the court charged the jury as follows:

"VI. You are, however, further charged as the law applicable to the facts of this case, that if you do not believe, from a preponderance of the evidence, that said cars were set in motion through the yard without any engine attached thereto, and without any lights thereon, and without any servant thereon to control the movement of said cars and to give warning of their approach to any switchman who might be endangered thereby, while in the discharge of his duty, if any such there were, or if they were, that the employes, including Berry, were not thereby exposed to danger of being injured or killed; or if you believe they were, yet do not believe that the setting of the cars in motion was negligence under the circumstances, or if any you believe it was, yet do not believe that the injury and death of Berry was a natural and probable consequence of such negligence, if any, or do not believe that such injury and death was a result so manifest, under the circumstances, as that defendant and said servants, in the exercise of ordinary care, should have anticipated and provided against the same; or if you believe an employe was on said cars for the purpose of controlling their movement or to give warning of their approach, you will,

in either case, without inquiring further, return a verdict for defendant. Or if you believe from the evidence that the death of William Berry was caused or contributed to by his own want of ordinary care, in that he voluntarily entered and remained upon one of the tracks upon which the cars were being moved and knew, or in the exercise of ordinary care would have known, that said cars were being moved toward him, or failed to use ordinary care to discover the approach of said cars and avoid contact therewith, you will also return a verdict for defendant, and this, too, notwithstanding you may believe that defendant's said servants were guilty of negligence in setting the cars in motion as charged by plaintiffs in their petition."

At the instance of the defendant the court charged the jury as follows:

"You are instructed that under the law of this case the deceased, William Berry, as an employe of defendant, is held to have known and been familiar with the locations and arrangement of the sidetracks, switches and leads, and the usual and established methods of switching and moving cars by the switch crews on defendant's tracks and sidings in defendant's yards, at which the alleged injury occurred, and is held, by law, to have assumed the risk of injury or death which might result from such operations and movements on said tracks, as incidents thereto. Therefore, if you find from the evidence that the deceased, William Berry, was injured as the result of the movement of cars on said tracks, according to the usual method practiced in defendant's service, in which the said Berry had been and was working as a switchman, then you will return your verdict in favor of defendant. And in this connection you are further instructed that it would be immaterial whether the arrangement of the tracks and sidings could have been made safer, or the usual methods so employed might have been altered so as to make them safer. In any event the deceased, as an employe of defendant, would be held in law to have assumed the risk of such injuries as might result as incident to the established and usual arrangements and methods of the defendant."

The court, by the fourth paragraph of the charge, instructed the jury that they would receive the law from the court, as contained in the general charge, and in any event charges that might be given them, and that they should be governed thereby.

Thus. it will be seen that the court, in the paragraph complained of, affirmatively submitted the facts necessary to be found by the jury before a verdict could be found in favor of plaintiffs, and in the next paragraph stated the facts which, if found by the jury to exist, would entitle defendant to a verdict. It is a familiar and well recognized rule in the construction of charges that all the parts of a charge must be construed together, including special charges given at the request of either party. The sixth paragraph of the charge is not in conflict with or contradictory of the part complained of, and when considered together and in connection with the special charge above quoted could not have misled or confused the jury. Womack v. International & G. N. Ry. Co., 100 S. W. Rep., 1151.

Error is predicated upon the refusal of the court to give to the

jury the second special charge requested by the defendant, which is as follows:

"You are instructed that the burden of proof is on the plaintiffs to show, by a preponderance of the evidence, the existence of negligence by it; and that such on the part of defendant in one or more of the particulars alleged by it, and that such negligence, if any, was the proximate cause of the injury. Therefore, unless you find from a preponderance of the evidence that there was negligence on the part of defendants, . . . and in the particulars hereinafter submitted, and unless you further find that such negligence, if any, was the proximate cause of the injury and death of William Berry, as hereinafter submitted, you will return your verdict in favor of defendants. And in this connection you are further instructed that, even though you should find the existence of such negligence on the part of defendant, and that the same was the proximate cause of said injury and death, nevertheless, if you further find, from a preponderance of the evidence, that the said injury and death were also the proximate result of contributory negligence on the part of deceased, or of a risk ordinarily incident to the service in which he was engaged, . . . then, and in such an event, you will find your verdict in favor of defendant, notwithstanding such finding of negligence on the part of defendant."

In the proposition following the assignment appellant asserts that, although the trial judge should give charges correctly stating the law on a given issue, if he fails to apply the same to the evidence the defendant has the right to prepare and have given a special charge, requiring the jury to find whether the evidence establishes the existence of any specified group of facts, which, if true, would in law establish a plea of contributory negligence or assumed risk, and instructing the jury if they find such group of facts proven. to return a verdict for defendant. This is a correct statement of a general legal principle, but does not show that it has any application to the facts of this case; it does not point out "any specified group of facts" which, if true, would establish defendant's plea of contributory negligence and assumed risk. The court's general charge and the special charges given at the request of defendant embraced the matter contained in the refused special charge, and the refusal of the court to give the additional instruction was not error.

The fourth, fifth and sixth assignments of error are based on the refusal of the trial court to grant a new trial for the reason (1) that the evidence failed to show actionable negligence upon the part of appellant, but did show (2) contributory negligence upon the part of the deceased, Berry, and (3) that the injury and death of Berry were the result of risks which he assumed. William Berry, the deceased, was a member of the switching crew of which Norton was foreman, in the defendant's yards, known as the Hardy street yards, in the city of Houston. There were six men who composed the switching crew, including the engineer and fireman, and the engine to which they were attached was called a switch engine. There were four separate switching crews operating in said yards on the night Berry was injured. There were three leads in the yard, known by the names of back, or roundhouse lead, new lead and old lead. With the back, or roundhouse

lead, was connected tracks Nos. 10 to 14 inclusive, and with the new lead was connected tracks Nos. 1 to 9 inclusive. Track 10 in the roundhouse lead and 9 in the new lead were parallel and had a space about 8 feet wide between the nearest rails. Each lead with its connecting tracks constituted practically a separate and distinct yard. These leads were used for switching cars. It was Berry's duty to follow the engine, couple and uncouple the cars, and to give and receive signals in switching cars. A train containing about 24 cars, among which were two cars loaded with stock, had come into the yards and was stopped on track 9. The cars of stock were the sixth and seventh cars from the engine, and had to be cut out of the train and taken to the consignees. Norton, the foreman, directed Berry to uncouple the five cars next to the engine from the cars of stock, and to pull down east to clear, so that another engine could come on the track and get the stock. This was done, and after the stock cars were switched out of the way the engine of which Norton was foreman backed up to the remaining cars for the purpose of coupling to them and of making further distribution of them. Just east of the place where the train was left standing the track curved to the south, and the place where the engine was standing after pulling out the cars which were ahead of the stock cars was on this curve. After the engine pulled down on this curve Berry, with a lighted lantern, walked a short distance westwardly, and when last seen before he was injured was standing on or very near to track 10. The engine being on the curve, it was necessary for Berry to stand some little distance from the track on which the train was in order to see and receive and transmit signals, and track 10 was a proper place for him to stand while giving and taking such signals. Another crew, of which Minnette was foreman, was switching a string of cars in the back or roundhouse lead with the engine on the east end, and cut off four cars from the rear just west of Hardy street, and "kicked" them westwardly over track 10 and by the point where deceased was walking, which cars ran upon deceased, injuring him, and causing death in a few hours thereafter. By "kicked," as understood among practical railroad men, is meant that the cars are set in motion by the engine, and that after a sufficient speed has been acquired the engine is stopped, and the cars are carried by the momentum thus given them to the point to which it is desired they shall go. On the occasion in question the cars, after leaving the engine, traveled upon track 10 at the rate of six or seven miles an hour, and were brought to a stop by coming in contact with other cars standing on the track. The impact was sufficiently great to break out the end of one of the four moving cars. It was in the night time, and dark. There was no employe on the four cars to control or to give warning of their movement, nor were they provided with lights. No eye-witness saw the cars strike Berry, but an exclamation of distress made by him was heard by the other employes, who, on investigation, found Berry beneath one of the cars injured. An examination of the ground disclosed that at or near the point where he was last seen before his injury, and where it was proper for him to be in giving signals, was found his lantern between the rails of track 10, and near the southernmost one, and at that point also, were blood stains, and indications

that he had been dragged between the rails in a westerly direction a distance of almost 130 feet to the point where he lay upon the track. It was usual and customary, in switching in this yard, to "kick" cars onto tracks, and Berry was an experienced switchman and knew of this custom. But the evidence did not show that it was customary to start cars in motion, and, after disconnecting them from the engine, permit them in the darkness of the night to run without some employe upon them to control their movement or give warning of their approach, or without providing them with light, and every effort made by appellees at the trial to prove the custom in this regard was objected to by appellant, and the objection sustained by the court. While Berry lay upon the ground, and in such proximity to the time of his injury as to form a part of the *res gestae,* he stated, "That is what I get for not having a man on the hind end of those cars." As before stated, there were three leads in the yard, and each lead with its tributary tracks constituted practically a separate and distinct yard. The switching crews of Norton and Minnette were engaged in the same general employment of switching cars, but upon separate leads, and Berry was in Norton's crew, and was not participating in the work then being done by Minnette's.

The evidence is sufficient to sustain the conclusion that Berry's injury and death were the result of the negligence of the appellant; that he, by his own negligence, did not contribute thereto, and that his injury and death did not result from any risk which he had assumed. It follows, therefore, that the court did not err in overruling appellant's motion for a new trial. Houston & T. C. Ry. Co. v. Turner, 91 S. W. Rep., 562; St. Louis S. W. Ry. Co. v. Brisco, 100 Texas, 354.

Appellant, in support of its fourth assignment, contends that, as the measure of the master's duty to the servant with reference to the place in which the latter is required to work is ordinary care to keep such place reasonably safe, and that as the evidence showed that the place where the deceased was injured was reasonably safe in view of the duties to be performed, no negligence upon its part was shown by the evidence. The facts of this case do not raise the question of safety of the place assigned the deceased in which to perform his work, but rather the doing of work, in a negligent and careless manner, by other employes, for whose negligence the master is responsible.

In support of the fifth assignment appellant urges the proposition that a switchman who, while aiding in the movement and placing of cars upon certain tracks in the yard within which other switch engines with their respective crews are known by him to be engaged also in operating and placing cars upon other and parallel tracks, steps upon or near to another track, when he knows, or by the exercise of ordinary care would know, that cars are moving thereon and approaching him, and who remains in such position until struck, must be deemed to be guilty of contributory negligence. This presents a sound proposition of law, but it is not applicable to the facts of this case. The only evidence tending to show contributory negligence on the part of deceased is the fact that he was on the track when the cars struck him, and there was no testimony that in the darkness, while in that situation he knew, or could have discovered their approach, nor that he

should have anticipated that the "kick" would be made in the way it was, without some employe on the cars to control their movement or to give warning of the danger. As the negligence of the master is never presumed, so the contributory negligence of the servant will not be presumed (Texas & Pacific Ry. Co. v. Gentry, 163 U. S., 367); and it was incumbent upon the appellant, if it relied upon the defense of Berry's contributory negligence, to establish that defense by proper proof.

By its sixth assignment appellant contends that inasmuch as Berry was shown to have been an experienced switchman, and acquainted with the arrangement of the leads and tracks in the vicinity of his injury, and with the usual and established methods of switching cars, and inasmuch as his injury and death were caused by the movement of cars on said tracks according to the usual and established methods and customs prevailing in said yard, he had assumed the risk. It is true that one who is engaged in the performance of work in a manner well known to him must be held to assume the risks of danger involved in the performance of the work in that way, even though the methods employed be negligent, but that principle has no application to the facts in this case, because it is not shown by the evidence that the "kicking" of cars onto the sidings or tracks on a dark night, without any employe thereon to control their movement or to give warning of their approach to anyone rightfully upon the track, or without providing such cars with lights whereby their approach might have been discovered by one situated as Berry was, was according to the usual practices prevailing in appellant's yards. In addition to this it would seem from the opinion of the Supreme Court, rendered by Associate Justice Brown in the Briscoe case, that the principle that one engaged in performing work in a manner well known to him must be held to assume the risk involved in the manner of the performance of the work in that way, is subject to the qualification that the servant does not assume the risk of a known negligent method of doing the work unless he participated in it. The facts show that Berry was a member of Norton's crew, and was engaged on the new lead in switching the cars which composed a train that had just come into the yards off the Victoria Division. The cars that struck and injured Berry were being switched by Minnette's crew on the roundhouse lead. These two leads practically constituted separate and distinct yards; and, while both crews were engaged in switching cars, Berry did not participate in the work then being done by Minnette's crew, nor did Minnette's crew participate in the work then being done by the crew of which Berry was a member. The evidence does not show that Berry was in a position to know at the time that the cars were being switched, as usual, in an unsafe and negligent way. As said by Associate Justice Brown in the case referred to: "The question of assumption of risk depends largely upon the position of the party who is to be charged with such assumption with regard to his opportunity for knowing that at that time the thing to be done will be performed in the usual manner. If, knowing the usual method of doing the work, and that it will be performed in that way, he participates in it, he will be held to assume the risk."

What has been said above disposes of the assignment complaining of the refusal of the trial court to instruct a verdict for defendant.

The refusal of the trial court to give special charges Nos. 7, 8 and 11 is the basis of ninth, tenth and eleventh assignments of error. The general charge of the court, together with the special charges given at appellant's request, embrace all the matters contained in the refused special charges insofar as they were applicable to the facts; and in refusing to give them the court committed no error.

The verdict of the jury was not excessive.

The assignments not herein specifically referred to have been examined by us and found to present no reversible error, and are overruled. The judgment of the District Court is affirmed.

*Affirmed.*

Writ of error refused.