**HINES, Director General of Railroads, v. MORGAN. (No. 307–3624.)***

(Commission of Appeals of Texas, Section A. April 19, 1922.)

**Master and servant ⬥⟾295(7)—Charge on assumption of risk of injury by runaway engine held properly refused.**

In action for death of a fireman killed when his engine was struck by another engine which had been left unattended upon a side track and escaped and ran upon a main track, a charge on assumption of risk on the theory that waiting engines were habitually left unattended *held* properly refused.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by Mrs. Walter Morgan, administratrix, against J. L. Lancaster and another, as receivers, and Walker D. Hines, Director General of Railroads. Judgment for plaintiff affirmed as to Director General, and reversed as to other defendants by the Court of Civil Appeals (227 S. W. 524), and the Director General brings error. Judgment of Court of Civil Appeals affirmed.

George Thompson and R. S. Shapard, both of Dallas, and Head, Dillard, Smith, Maxey & Head, of Sherman, for plaintiff in error.

S. P. Jones, of Marshall, and Cunningham, McMahon & Lipscomb, of Bonham, for defendant in error.

GALLAGHER, J. January 5, 1919, plaintiff in error, Walker D. Hines, as Director General of Railroads, had charge of the Texas & Pacific Railway Company's lines of railway, and was operating the same as a carrier engaged in interstate commerce. On the morning of that day Walter Morgan, an engineer, but serving at the time as fireman on engine No. 247 attached to a passenger train engaged in interstate commerce and being operated on the main line of said railway, was killed by a collision with engine No. 794. Said engine No. 794 came from the yards onto the main line just as said engine No. 247 was at the switch which connects the main line with the tracks leading into the switchyards at Texarkana. There was no contention that the deceased, Walter Morgan, or any other person engaged in operating the said passenger train, was guilty of any negligence either causing or contributing to said collision.

Engine No. 794 on that morning had been prepared for service on the main line. It was carried by the inside hostler and his helper, and placed on the "long alley track" and turned over to the outside hostler's helper. The outside hostler and his helper were supposed to have charge of said engine until they, at the proper time, carried it to the proper place and attached it to the train

which it was to pull out of Texarkana. The tank was filled with water, and the engine under steam ready for service. The "long alley track" on which the engine was standing was connected by an open switch with the "lead track," which track was connected by an open switch with the main line. It was downgrade toward the main line for about 250 feet from where this engine was standing, and after a slight upgrade for a space it was again downgrade to the point of collision.. No derailing devices were used to prevent such an engine from running into a train on the main line. About 25 passenger trains and many freight trains in their regular, ordinary runs on the main line passed the place of collision every day.

The outside hostler seems to have been absent until after the collision. His helper was in the cab when the inside crew left the engine, but he soon thereafter left the same and went into the roundhouse, and when he returned he saw the engine moving down toward the main line.

This suit for damages for Morgan's death was commenced and prosecuted by his widow as the administratrix of his estate against the plaintiff in error, Hines, and the receivers of the railway company. The case was submitted to the jury on a general charge, and a verdict returned in favor of Mrs. Morgan as administratrix, and judgment rendered in her favor thereon. On appeal the Court of Civil Appeals for the Sixth district reversed the judgment as to the receivers, and rendered judgment in their favor, but affirmed the judgment against the said Director General, represented at the time by John Barton Payne as Federal Agent. Lancaster v. Morgan (Tex. Civ. App.) 227 S. W. 524. He applied for writ of error, which was granted by the Supreme Court.

The principal contention of plaintiff in error is that the trial court erred in failing and refusing to charge on assumed risk.

The court submitted the right of defendant in error to recover in the following paragraph of his charge:

"Now if you believe from the evidence that the defendant and its employés left the said engine 794 standing upon an incline with sufficient steam up to move the same unattended by an employé of the company; and you further believe from the evidence that the defendants or their employés had failed to exercise ordinary care to keep the brakes and appliances for operating such brakes or the throttle upon such engine or the appliances for moving and stopping said engine in a reasonably good condition of repair, and that while said engine was so standing unattended the brakes were released by leakage of air, or that sufficient steam got into the valves and cylinders to cause said engine to start; or if you believe from the evidence defendants or their employés were negligent in leaving said engine unattended, if they did, and that said engine was started by a trespasser or

some person not employed by defendant, and ran down the track and collided with the engine upon which the deceased was working, and you further believe from the evidence that the defendants or their employés were negligent in any or all of the respects hereinbefore set out, and that such negligence, if any, upon their part was the proximate cause of the collision and the death of the plaintiff's husband—you will find for the plaintiff and assess her damages according to the rule hereinafter given you."

There was evidence that it was customary for both the outside hostler and his helper to leave engines standing on this track unattended at times, though they were supposed to look after them in a general way and see that they were kept in condition and not molested or interfered with. There was no testimony that such engines were always left unattended while so standing on said track, nor that the switches were always open to the main line without any derail or precaution to protect engines or trains on the main line from such engines from the yards.

The evidence showed that the deceased, about three months before the collision, had worked as hostler in these yards, and knew, or must necessarily have known, the usual and customary method of handling waiting engines. There was no evidence that he knew a waiting engine was in the yards on the morning of the collision.

Plaintiff in error excepted to the charge of the court above quoted in submitting the leaving of said engine unattended as a ground of negligence and liability, on the ground that the evidence showed that deceased had acted as hostler and knew, or was charged with knowledge, of the manner of handling waiting engines in said yards, and assumed the risk of injury from such method of handling such engines. Defendant in error also requested a special charge submitting the issue of assumed risk to the jury as a ground of defense, which was refused.

The case of Railway v. Turner, 99 Tex. 547, 91 S. W. 562, was a suit for damages for the killing of one Turner, foreman of a section gang at work in the switchyards at the time. He stopped behind a flatcar for purposes of his own, and while there the switch crew shoved or kicked some box cars onto the track on which said flatcar was standing, with such force that they struck it and caused it to run against him, knock him down and run over him, inflicting fatal injuries. The railroad requested the court to charge the jury, in substance, that if Turner knew that cars would probably be switched onto said track, and knew that the usual and customary manner of placing cars on said track was by shoving or kicking them over the switch in the manner in which they were so shoved or kicked at the time of the accident, and that with such knowledge, and

with knowledge of the danger to himself in doing so he went upon said track behind said flatcar, he assumed the risk of injury.

The charge was refused, and the railroad carried the case to the Court of Civil Appeals. That court certified to the Supreme Court, among other questions, the following:

"Did the court err in refusing to give in charge to the jury appellant's requested charge on the issue of assumed risk quoted above?"

To this question the Supreme Court replied as follows:

"The deceased was not connected with the work of switching the cars in the yard; therefore he did not assume the risk of injury from the negligent method by which other employés of the railroad company did the switching. The proposition contended for by the railroad company is, that if its employés were habitually negligent in the manner of handling the cars and Turner knew the fact, he assumed the risk of injury from such negligence. As a general rule the employé does not assume the risk of dangers growing out of the employer's negligence, or the negligence of those for whom the master is responsible, however habitual it may be. To this rule there are exceptions, but the facts do not bring this case within any one of them. Grace v. Kennedy, 99 Fed. Rep. 679; Schroeder v. Chicago & A. Ry. Co., 108 Mo. 322; Caron v. Boston & A. Ry. Co., 164 Mass. 523; Hosic v. Chicago, R. I. & P. Co., 75 Iowa, 683; s. c., 9 Am. State Rep. 518; Peck v. Peck, 12 Tex. Ct. Rep. 784; Seley v. Southern Pacific Co., 6 Utah, 319; Texas & P. Ry. Co. v. Archibald, 170 U. S. 665; Hamilton v. Des Moines Valley Ry. Co., 36 Iowa, 31.

"In the case of Texas & Pacific Railway Co. v. Archibald, before cited, the facts were, briefly: The plaintiff was a brakeman in the employ of the Texas & Pacific Railway Company at Shreveport, Louisiana, which company habitually received from the Cotton Belt Railway Company, without inspecting them, cars to be handled in the yard of the Texas & Pacific Company. In the course of his employment the plaintiff undertook to uncouple two oil tank cars, received from the Cotton Belt Railroad, then standing in the yard of the Texas & Pacific Company, and, on account of a defect in the coupling of the cars, he was injured. To his claim for damages the railroad company pleaded that he had assumed the risk of injury from such cause because of the fact that it habitually received such cars without inspection. In disposing of the question the Supreme Court of the United States said: 'Indeed, the ultimate result of the argument of the plaintiff in error is to entirely absolve the employer from the duty of endeavoring to supply safe appliances, since it subjects an employé to all risks arising from unsafe ones, if the business be carried on by the employer without reasonable care, and the employé knew or by diligence would have known, not of the dangers incident to the business, but of the harm possibly to result from the employer's neglectful methods. Measured by the principles just stated the trial court not only did not err in striking out parts of the instructions which were asked, but in the portions given stated the law to the jury more favorably to the plaintiff in error

than was sanctioned by true legal principles.'

"In the case of Hamilton v. Railway Company, before cited, the facts were: The railroad company was in the habit of loading its lumber cars so that the timbers would project beyond the car; this was proved to have been the common method of loading the lumber cars. One of its employés was injured while attempting to couple a car so loaded, being caught between the engine and a projecting piece of timber. The railroad company contended that because its cars were loaded in the usual manner, although negligently done, the employé assumed the risk of such negligence, and asked the court to instruct the jury as follows: 'If the car of timber which hurt the plaintiff was loaded as loads of timber had been usually and commonly loaded and carried over defendants' and all other railroads, then it was not negligence in defendant to carry the timber upon which plaintiff was hurt.' The instruction was refused, and disposing of the assigned error, that court said: 'The instruction was properly refused for the obvious reason that habits of negligence on the part of defendant or other railroads, will not relieve them from the consequences of their negligent acts. It can hardly be insisted that, if one is "usually and commonly" negligent, he will escape liability for his acts, and that the usual and common delinquencies of others will have the effect to excuse him. If, because an act is usual and common, it ceases to be negligent, it follows that the sure way of escaping liability for injuries to persons and property, in cases of this character, would be to adopt a certain and uniform system of common negligence.'

"The above quotations so thoroughly discuss the propositions and answer the contention of the appellant in this case that it is unnecessary to give additional reasons in support of our answer."

The case of Railway Co. v. Brisco, 100 Tex. 354, 99 S. W. 1020, involved an injury to Brisco, a section hand, while assisting to remove a handcar from the toolhouse and place it upon the track. He testified that he and another took hold of the car at the front, and that others took hold of the car behind, and pushed it forward onto the track; that unexpectedly to him, and without any warning, the parties pushing said car from behind gave the same an unusual, quick, violent shove forward, knocking him down and injuring him. There was testimony that the car was handled at the time in the usual and customary manner, and that Brisco knew such custom. The Supreme Court held in answer to certified questions that the charges applying the doctrine of assumed risk to the facts of that case should have been given, and distinguished that case from the case of Railway v. Turner, as follows:

"One who is engaged in the performance of work in a manner well known to him must be held to assume the risks of dangers which are involved in the performance of the work in that way. There was no conflict in the testimony as to the fact that Briscoe had been engaged in performing this character of work, that

is, putting the car upon the track for some time; that he was experienced and had full knowledge as to the method in which the work was done. He was participating in the work on this occasion, and the facts bring it within the rule laid down by this court in Gulf, C. & S. F. Ry. Co. v. Huyett, 92 S. W. Rep. 454.

"The difference between the case at bar and the case of Railway Co. v. Turner, 91 S. W. Rep. 562, is that in the Turner Case the injured party was not engaged in the work of switching the cars from which the injury occurred to him, but was engaged in a wholly independent business. He was not in a position to know at the time that the cars were being switched, as usual, in an unsafe and negligent way. *The question of the assumption of risk depends largely upon the position of the party who is to be charged with such assumption with regard to his opportunity for knowing that at that time the thing to be done will be performed in the usual manner. If, knowing the usual method of doing the work and that it will be performed in that way, he participates in it, he will be held to assume the risk.*" (Italics ours.)

The case of Railway Co. v. Berry, 47 Tex. Civ. App. 327, 105 S. W. 1019, 1023, 1024 (writ refused), was a suit for damages for the death of one Berry, who was struck and killed in the switchyards while engaged in the performance of his duties as a switchman. The tracks of the roundhouse lead lay parallel with the tracks of the new lead, with a space of about eight feet between the rails of the adjacent tracks on the respective leads. It was contended that the death of Berry resulted from the manner in which cars were customarily switched in said yards, and that Berry knew of such custom, and assumed the risk. We quote from the opinion in that case on the subject of assumed risk as follows:

"In addition to this, it would seem from the opinion of the Supreme Court, rendered by Associate Justice Brown in the Briscoe Case, that the principle that one engaged in performing work in a manner well known to him must be held to assume the risk involved in the manner in the performance of the work in that way is subject to the qualifications that the servant does not assume the risk of a known negligent method of doing the work, unless he participated in it. The fact shows that Berry was a member of Norton's crew and was engaged on the new lead in switching the cars which composed a train that had just come into the yards off the Victoria division. The cars that struck and injured Berry were being switched by Minnette's crew on the roundhouse lead. These two leads practically constituted separate and distinct yards; and, while both crews were engaged in switching cars, Berry did not participate in the work then being done by Minnette's crew, nor did Minnette's crew participate in the work then being done by the crew of which Berry was a member. The evidence does not show that Berry was in a position to know at the time that the cars were being switched, as usual, in an unsafe and negligent way."

The same principle was announced and applied in the case of Railway v. Stoy, 44 Tex. Civ. App. 448, 99 S. W. 135, and writ of error was refused.

The evidence in this case shows conclusively that the deceased was at the time of the collision engaged in work wholly different from and independent of the work being done by the hostler and helper in charge of the waiting engine. He was operating a passenger train on the main line. They were holding a waiting engine in the switchyards until it was necessary to attach it to some other and different train. There is no contention that he knew that the waiting engine was in the yards, or that it was left unattended on an open switch leading to the main line at the time of the collision. Conceding that the evidence shows that he knew that waiting engines in the yards were sometimes, or even habitually, left unattended, he was not in a position to know that such was the case at the time of the collision, nor can it be claimed that he, with such knowledge, participated in the negligent handling of such waiting engine, and that he was injured while so participating.

The evidence was, under the authorities cited, insufficient to raise an issue of assumption by the deceased of the risk of injury from the escape of the waiting engine which collided with the engine he was operating at the time, and the court did not err in refusing to submit such issue to the jury. H. & T. C. Ry. Co. v. Turner, supra; St. L. S. W. Ry. Co. of Texas v. Brisco, supra; T. & P. Ry. Co. v. Archibald, 170 U. S. 665, 674, 18 Sup. Ct. 777, 42 L. Ed. 1188; G., H. & S. A. Ry. Co. v. Berry, supra; G., H. & S. A. Ry. Co. v. Stoy, supra; G., H. & S. A. Ry. Co. v. Hansen, 58 Tex. Civ. App. 584, 125 S. W. 63 (writ refused); Hamilton v. Des Moines Valley Ry. Co., 36 Iowa, 31; Miller et al. v. Wayman (Tex. Civ. App.) 157 S. W. 197, 201.

We have considered the other issues raised in the application in this case, and are of the opinion that none of them present reversible error.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed.