## GALVESTON, H. & S. A. RY. CO. v. CONTOIS.    (No. 849–4571.)

(Commission of Appeals of Texas, Section A. Nov. 24, 1926.)

**1. Commerce ⇒27(8)—Railroad employee placing grates between rails used in interstate commerce at time of injury held engaged in "interstate commerce" (federal Employers' Liability Act [U. S. Comp. St. §§ 8657–8665]).**

Railroad employee, at time of injury assisting in placing grates between rails for purpose of draining water of main lines used in interstate commerce *held* engaged in "interstate commerce," within federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), making defense of assumed risk applicable.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

**2. Master and servant ⇒217(25)—Employee holding grating cut with hammer and chisel assumed risk of injury from chips flying.**

Railroad employee holding grating while it was being cut by hammer and chisel was charged with knowledge of danger of chips flying therefrom, and assumed risk of injury caused by such method of cutting grating.

**3. Master and servant ⇒217(29)—Employee holding grating cut with hammer and chisel did not assume risk of injury from flying chips caused by negligent blow.**

Where employee holding grating while being cut by hammer and chisel by carpenter had no knowledge that carpenter would strike chisel with negligent degree of force, and such act of negligence proximately contributed to injury arising from flying chips, employee did not assume risk of injury caused thereby.

**4. Master and servant ⇒203(1), 227(1)—Assumed risk and contributory negligence are distinct defenses.**

Assumed risk and contributory negligence are separate and distinct defenses, and proof of one does not necessarily establish proof of other.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by Gilbert J. Contois against the Galveston, Harrisburg & San Antonio Railway Company. Judgment for plaintiff was affirmed by the Court of Civil Appeals (279 S. W. 929), and defendant brings error. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, and Templeton, Brooks, Napier & Brown, of San Antonio, for plaintiff in error.

Perry J. Lewis, H. C. Carter, Randolph Carter, and Champ G. Carter, all of San Antonio, for defendant in error.

BISHOP, J. Defendant in error, Gilbert J. Contois, was employed by plaintiff in error, Galveston, Harrisburg & San Antonio Railway Company, as a carpenter helper. He and the carpenter under whom he was working were engaged in laying a drain to drain the rainwater from the railroad tracks opposite the company's depot at San Antonio. To effect this purpose, they were placing cast-iron grates between the rails of the track so that the water would go into the drain under the tracks. In order for the grates to fit between the rails it became necessary to cut some of them, and to accomplish this Contois held one of them while the carpenter was engaged in cutting it with a cold-chisel and hammer. In doing this a piece of metal cut from the grate struck Contois in the eye and put it out. He filed this suit against the company for damages and recovered judgment, which was by the Court of Civil Appeals affirmed. 279 S. W. 929.

In the trial court the jury, on special issues, found that the company was negligent in causing or permitting the grating to be cut with hammer and chisel; that such negligence proximately caused or proximately contributed to the accident and injury sustained by Contois; that the carpenter struck the chisel with a negligent degree of force; and that his negligence in so doing also proximately caused or proximately contributed to Contois' injury; that Contois was negligent in placing himself in such position that pieces of metal that might fly off as the grating was being cut might strike him in the eye; that his negligence in placing himself in this position proximately contributed to the accident and injury; that he was also negligent in taking hold of and holding the grating while the carpenter was cutting it with hammer and chisel; that his negligence in doing this also proximately contributed to the accident and injury; and that Contois did not assume the

risk of being injured in the manner in which he was injured.

On the claim made by the company before the Court of Civil Appeals that the evidence in this case shows as a matter of law that Contois, as an employee of the company, assumed the risk of the injury received by him, that court held that the evidence does not show that the work in which Contois was engaged at the time he was injured was a part of the interstate commerce in which the company was engaged, and that for this reason the law of assumed risk had no application. It further held that even if the law of assumed risk was applicable by reason of the fact that he was engaged in a work that was a part of such interstate commerce, the evidence presented an issue of fact as to whether such risk was assumed by him, and the verdict was therefore conclusive on this issue. These two holdings are here challenged by assignments presented in the petition of plaintiff in error.

The uncontradicted testimony of James M. Elledge, a witness for the company, is:

"I was the assistant foreman of the gang that was working out here by the depot last January, at the time Mr. Contois got his eye hurt; this was a gang of the bridge and building department, maintenance of way. I had charge of the gang that was doing the work on the little drainage ditch at the time Mr. Contois got his eye hurt. We have got two tracks there on our main line, one that the trains go west on, and the other that the trains go east on, and this drain that we were installing there had some of the grates put in between the rails on the two main line tracks. We had the grates there up to where we were working, and the water from these two main lines emptied into this drain; that was for the purpose of draining the water off of the Southern Pacific grounds, off the main line; and all other stuff that went on in connection with the gutter down south from the main station, it was to take up the surplus water on the station grounds. The passenger and freight trains coming and going from both ways pass through the main lines there. Some passenger and freight trains come from New Orleans that go over the main line, and some through trains go over the main lines to California and other points outside of the state. Nearly all through trains, passenger trains, come over track 4. Our drain passed under track 4, and it passed by all of the tracks there by the passenger depot—in other words, this drain passed under and across all of the tracks there at the passenger depot. There are two brick pavements, 20 feet or 21 feet wide—brick pavements about 21 feet wide or 20; I don't know just exactly the accurate measurements; that is the part that the sheds are over. There is no way for a passenger or freight train, traveling from New Orleans to California, on the Southern Pacific, to go through San Antonio without going over that drain that we put in there, and that drain was put there for the purpose of draining those tracks."

[1] Contois, at the time he was injured, was assisting other employees in placing grates between the rails for the purpose of draining water off the main lines of plaintiff in error while it was engaged in interstate commerce along and over these lines. The grate was being cut in order to make it fit between the rails, and was to be at once placed where the work was being done. Under the construction given the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), by the Supreme Court of the United States, this work was a part of the interstate commerce in which plaintiff in error was at the time engaged, and the defense of assumed risk is clearly applicable to this character of case. Pedersen v. Railway, 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153.

[2] Contois is by the evidence shown to be a man of at least ordinary intelligence. He knew that chips would fly from the grating in being cut by hammer and chisel, and was charged with knowledge of the danger to which he was exposed by this method of cutting the grate, whether the company was or was not negligent in causing or permitting the grates to be cut in this manner. He therefore assumed the risk of injury caused alone by the method used in cutting the grate. G., C. & S. F. Ry. Co. v. Huyett, 99 Tex. 630, 92 S. W. 454, 5 L. R. A. (N. S.) 669; St. L. S. W. Ry. Co. of Texas v. Brisco, 100 Tex. 354, 99 S. W. 1020.

[3] There is no evidence in the record indicating that he knew or had any reason to suspect that the carpenter would strike the chisel with a negligent degree of force, and the evidence supports the finding of the jury that this act of negligence on the part of the carpenter proximately contributed to cause his injury. This act being an efficient cause without which the injury would not have been sustained, he did not assume the risk of injury caused thereby. Poindexter v. Receivers Kirby Lbr. Co., 101 Tex. 322, 107 S. W. 43; Mo. Pac. Ry. Co. v. Somers, 78 Tex. 442, 14 S. W. 779; Texas & N. O. Ry. Co. v. Kelly, 98 Tex. 137, 80 S. W. 79.

[4] Contois did not assume the risk of the injury caused by the negligent act of the carpenter by reason of his contributory negligence in holding the grating while it was being cut and in placing himself in such position that the pieces of metal that might fly off as the grating was being cut might strike him in the eye. Assumed risk and contributory negligence are separate and distinct defenses, and proof of one does not necessarily establish the other. Galveston, H. & H. Ry. Co. v. Hodnett, 106 Tex. 190, 163 S. W. 13.

The erroneous holdings of the Court of Civil Appeals herein indicated do not require a reversal of its judgment, and we recommend that the judgments of both courts be affirmed.

CURETON, C. J. Judgments of the Court of Civil Appeals and district court both affirmed, as recommended by the Commission of Appeals. ·