GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v. G. L. STOY.

Decided December 12, 1906.

**1.—Assumed Risk—Knowledge of Attendant Risks.**

The rule in cases of defective appliances is that the servant does not assume the risks arising from the failure of the master to do his duty, unless he knows of such failure and the attendant risks, or, in the ordinary discharge of his duties, must necessarily have acquired the knowledge. By "necessarily acquired knowledge" is meant that which arises from the obvious and open negligence, which the servant must have seen and known in performing his work, by the use of ordinary care.

**2.—Same.**

A servant assumes only those risks ordinarily incident to the business in which he is engaged.

**3.—Hypothetical Question—Expert Testimony.**

A hypothetical question based on proven facts, and the answer thereto of a medical expert, by which the plaintiff sought to show that his present nervous condition was the result of the injuries inflicted by defendant, and not the effect of a nervous attack suffered a year previous, were not improper.

**4.—Admission of Improper Testimony—Subsequent Withdrawal.**

Where improper testimony has been admitted to the jury and subsequently withdrawn from their consideration by sufficient instructions from the court, such action is not ordinarily cause for reversal. To warrant a reversal of a judgment

for such cause there must be strong reason for believing that the improper admission of the evidence has caused a wrong to be done the objecting party.

### 5.—Damages—Mental Suffering.

Where the proof showed the plaintiff suffered great physical pain by his permanent injuries, mental suffering may be inferred, no direct proof on that point being necessary.

### 6.—Conflict in Evidence—Province of Jury.

Where there is a sharp conflict in the evidence as to the extent of plaintiff's injuries it is the peculiar and exclusive province of the jury to pass upon the credibility of the witnesses and the weight to be given their testimony. Evidence considered, and held not to disclose passion or prejudice on the part of jury in rendering a verdict for $8,000.

Appeal from the District Court of Bexar County. Tried below before Hon. A. W. Seeligson.

*Baker, Botts, Parker & Garwood, Newton & Ward* and *W. B. Teagarden,* for appellant.—The methods under which the master conducts his business are among the assumed risks of the servant. Bonnett v. Galveston, H. & S. A. Ry., 89 Texas, 72; Watson v. Houston & T. C. Ry., 58 Texas, 438; Gulf, C. & S. F. Ry. v. Harriett, 80 Texas, 73; Texas & Pac. Ry. v. Bradford, 66 Texas, 734; Louisville, N. A. & C. Ry. v. Frawley (Ind.), 28 Am. & Eng. Ry. Cases, 308, see also p. 469; Woods Law of Master & Servant (2d ed.), sec. 382; Bailey's Liability of Master, etc., pp. 35 and 180.

The methods of the service whether prudent or not are among the assumed risks. Bonnett v. Galveston, H. & S. A. Ry., 89 Texas, 72; Watson v. Houston & T. C. Ry., 58 Texas, 438; Galveston, H. & S. A. Ry. v. Gormley, 91 Texas, 399; Gulf, C. & S. F. Ry. v. Harriet, 80 Texas, 73; Texas & Pac. Ry. v. Bradford, 66 Texas, 732; Woods Law of Master & Servant (2d ed.), sec. 382; Bailey's "Masters Liability for Injuries to Servants," p. 35 and p. 180 et seq.; Seymour D. Thompson, in Am. Law Review, January-February, 1897.

That his injuries resulted from an assumed risk see authorities under the first assignment of error also. Texas & Pac. Ry. v. Bradford, 66 Texas, 737; Missouri Pac. Ry. v. Somers, 71 Texas, 700.

The simple effects of the common laws of nature and all matters of which the servant has equal opportunities with the master to observe and know and understand are within the range of assumed risks. Texas & Pac. Ry. v. French, 86 Texas, 96.

It was a sharply contested issue at the trial whether the fall and bruise to appellee's knee at the time of the accident sued on caused his alleged nervous fits and prostration, or whether it was caused by, and a continuation of, the effects of a total and very serious nervous collapse from which it was admitted by him he suffered for several months prior to the accident. Appellant showed that the injury to his knee consisted of nothing more than a bruise, the effects of which soon disappeared and appellee sought to prove, and did prove by the witness Dr. Caffery, in effect, that the present collapsed nervous condition of appellee was due entirely to the last accident and that the former had no connection with it. This testimony was a conclusion and opinion of the witness not

within the domain of expert testimony and was an invasion of the province of the jury. Glasgow v. Metropolitan St. Ry., 89 S. W. Rep., 914; Taylor v. Grand Ave. Ry., 84 S. W. Rep., 877; People v. Morrigan, 29 Mich., 5; Schumaker v. St. Paul & D. Ry., 46 Minn., 39, 48 N. W. Rep., 559; Ohio & I. Torpedo Co. v. Fishburn (Ohio), 56 N. E. Rep., 457.

Hypothical question must embrace all the material facts. Hicks v. Galveston, H. & S. A. Ry. (Texas Civ. App.), 71 S. W. Rep., 322; same case in Texas Sup. Ct., 72 S. W. Rep., 835; Senn v. Southern Ry., 108 Mo., 142, 18 S. W. Rep., 1007.

The court erred in permitting plaintiff's attorney to propound to said witness, Dr. Caffery, the following question: "Q. Well, Doctor, to what do you ascribe Mr. Stoy's neurasthenic condition that you have described (referring to the statement of the witness to the preceding question, being a statement, of plaintiff's condition), the rapid heart, the increased temperature." And the question, "To what do you ascribe his nervous condition." And the court erred in permitting the said witness to give the answer thereto, as follows: "A. I regard it, sir, as the result of the accident which he detailed to me." Taylor v. Grand Ave. Ry., 84 S. W. Rep., 877; People v. Morrigan, 29 Mich., 5; Schumaker v. St. Paul & D. Ry., 46 Minn., 39, 48 N. W. Rep., 559; Hicks v. Galveston, H. & S. A. Ry., 71 S. W. Rep., 322, 72 S. W. Rep., 835; Graney v. St. Louis, I. M. & S. Ry., 57 S. W. Rep., 276.

When all the facts are before the jury, or can be placed before the jury and the conclusion to be drawn or the opinion sought is one that persons of ordinary intelligence are capable of determining for themselves an opinion or conclusion of the witness is an invasion of the province of the jury. Houston & T. C. Ry. v. Reason, 61 Texas, 615; Brown v. Mitchell, 88 Texas, 350; Shapter v. Pillar, 28 Colo., 209, 63 Pac. Rep., 302.

The voluntary withdrawal of this testimony and the remarks of the court did not cure the error. Smyth v. Caswell, 67 Texas, 577.

*John Schoon,* for appellee.

FLY, Associate Justice.—Appellee sued appellant for damages, alleging that he was an employe of appellant, working as a switchman, in the yards at San Antonio, Texas, and that while he was on one of three cars that were to be carried from one part of the yards to another, appellant, in attaching the switch engine to said cars threw such locomotive with such violence against said cars as to hurl appellee from the car on which he was riding, to the next car, with such force, as to permanently injure him. Appellant answered by general demurrer, general denial and plea of contributory negligence. A trial by jury resulted in a verdict and judgment for appellee in the sum of $8,000.

We find that appellee was injured by the negligence of appellant, for whom he was laboring as a switchman, by running a locomotive against the car on which he was standing, in discharge of his duties, with such violence as to precipitate him from the top of one car to another, and seriously and permanently injure him.

The first assignment of error complains of the rejection of the following requested charge:

"You are further charged, gentlemen of the jury, that even though you should find and believe from the facts that in making the coupling in question more speed and force was used than an ordinarily prudent person would have used under the circumstances, should you further find and believe from the facts that such speed and force as was used on the occasion in question was a matter of common practice and custom in defendant's yards and had been so during plaintiff's service there, so that it might reasonably have been expected by him, then this was one of his assumed risks."

The effect of the charge was to instruct the jury that although appellant had been guilty of negligence, yet if such negligence was a matter of common practice and custom in the yards of appellant, so that it might have been reasonably expected by appellee, he assumed the risks arising from such customary negligence. Now the rule in cases of defective appliances is that the servant does not assume the risks arising from the failure of the master to do his duty, unless he knows of such failure and the attendant risks, or in the ordinary discharge of his duties must necessarily have acquired the knowledge. By "necessarily acquired knowledge" is meant that which arises from the obvious and open negligence which the servant must have seen and known in performing his work by the use of ordinary care. (Bonnett v. Galveston, H. & S. A. Ry., 89 Texas, 72; Missouri, K. & T. Ry. v. Hannig, 91 Texas, 347; Peck v. Peck (Texas Sup. Ct.), 87 S. W. Rep., 248; El Paso & S. W. Ry. v. Vizard (Texas Civ. App.), 88 S. W. Rep., 457.)

The requested charge was erroneous even if it was applicable at all to a case like this, in not basing the assumed risk of appellee upon his knowledge of the negligent manner in which appellant customarily switched and coupled its cars, or upon the knowledge he must necessarily have acquired in the performance of his work. Upon what was the reasonable expectation he had of the violent coupling based? It is not indicated in the charge. Even if the charge had not been defective on the point indicated, it was erroneous in not making the assumption of risk contingent on proof, not only of knowledge of the negligent way in which appellant performed its work, but also of proof that appellee understood the risk and appreciated the danger arising from such negligence.

If the charge had been correctly drawn, it should have been refused because there was no evidence that it was customary to strike the cars with the force that was used on the occasion that appellee was injured. The only evidence on the subject to which we are referred by appellant is the testimony of the engineer on the locomotive that struck the car which does not sustain the assertion of appellant that the manner of the coupling "was a matter of daily occurrence and common and habitual in the San Antonio yard." All the witness said was that "very often they hit them that hard" and "sometimes harder," and that "sometimes you have to strike them a pretty good lick to make them couple" and that it was very common to hit them hard. That evidence did not establish a custom, and there was no testimony tending to show that appellee knew the danger arising from making such couplings. On the cross examination, the engineer stated that such violent couplings were not made unless the switchman gave the signal and after an unsuccessful

effort to make a coupling, and the signal was not given in this case and it was not a second effort to make the coupling. It clearly appears from the evidence of the engineer that he knew that he was running his locomotive too fast and that he made an effort to lessen the speed, though too late to accomplish his purpose. While he swore that the engine was moving at the rate of four miles an hour, there was testimony tending to show that it was moving much faster.

In the case of Houston & T. C. Ry. v. Turner, 91 S. W. Rep., 562, the Supreme Court condemned a similar charge requested by the railway company in the following language: "The proposition contended for by the railroad company is that if its employes were habitually negligent in the manner of handling cars, and Turner knew the fact, he assumed the risk of injury from such negligence. As a general rule the employe does not assume the risk of dangers growing out of the employer's negligence, or the negligence of those for whom the master is responsible, however habitual it may be." A number of other States and the Supreme Court of the United States are cited in support of the rule enunciated. Under that decision there can be no question of the propriety of rejecting the special charge requested by the appellant in this case, even though it had been properly drawn.

The charge of the court complained of in the second assignment of error was correct so far as it went, and the only complaint urged is that it did not go further and state that appellee could not recover if he was guilty of contributory negligence in any other manner as well as that mentioned—the manner in which he was standing on the car when he was knocked off. No special charge on this point was requested by appellant. The charge was not erroneous in the particular mentioned, nor in confining the risks assumed by appellee to those ordinarily incident to the business in which he was engaged. Under the facts he could not have assumed any but risks ordinarily incident to the business about which he was engaged.

The third assignment of error represents that the verdict was against the "overwhelming weight of the facts" and enumerates certain facts claimed to be established by the evidence. The assignment can not be sustained. The evidence did not show, as stated, "that at the time of the accident in question, the engineer and employes in charge of the engine operated the same with due caution and with ordinary care." On the other hand it was shown by the engineer himself, that he had put on too much steam and was going too fast and that he knew that he struck the cars with too much force. Nor was it shown that "the entire method of moving and handling the cars at the time of the alleged accident, was in accordance with a long standing habit and custom known to plaintiff." Neither does it appear "from the overwhelming weight of the facts that in the manner in which plaintiff stood, acted and neglected to provide for his safety, when the cars came together, he was guilty of negligence which contributed to his injuries." On the other hand the jury was fully justified by the evidence in finding that appellee was not guilty of contributory negligence.

The fourth assignment of error complains of a hypothetical question propounded by counsel for appellee to Dr. Caffery in which it was sought to show that a certain excitement and nervous condition of appellee's

system was the result of the injuries inflicted by appellant, and not the outcome of a nervous attack he had a year previous, which was caused by his pulling an old man from in front of a moving engine; and also complains of the answer to the question. The grounds of objection were that it did not involve a question about which an expert could give an opinion, and that the hypothesis contained in the question was not based on the facts adduced. The answer to the question was rather enigmatical, but was not improper. The question was based on the proven facts. Appellee testified that there was apparently nothing the matter with him before he received his injuries and that he had almost regained his normal weight.

After the foregoing question had been propounded and answered appellee asked the doctor, to what he ascribed the nervous condition of appellee and he answered: "I regard it as the result of the accident which he detailed to me." The answer was properly admitted. Appellee had laid the predicate for the question and answer by putting the hypothetical case before the witness. The hypothetical case had been fairly established by the testimony. There was no dispute as to the manner in which appellee was hurt and on that the witness based his opinion.

The cases of Glasgow v. Metropolitan St. Ry., 89 S. W. Rep., 914; Taylor v. Grand Ave. Ry. (Mo.), 84 S. W. Rep., 877; People v. Morrigan, 29 Mich., 5, Schumaker v. St. Paul & D. Ry. (Minn.), 48 N. W. Rep., 559, and Ohio & I. Torpedo Co. v. Fishburn (Ohio), 56 N. E. Rep., 457, are cited by appellant as sustaining its contention. The Missouri case was rendered by the first division of the Supreme Court, and is directly in point and fully sustains appellant, but unfortunately for its value as a precedent, the second division of the same court about a week before had held directly the opposite doctrine in the case of Redman v. Metropolitan St. Ry., 84 S. W. Rep., 26. The Minnesota case does not pass on the point at issue. The opinion in the Glasgow case was rendered by the same division of the Supreme Court of Missouri, that rendered the opinion in the Taylor case and has the same handicap that opinion has, and we do not feel that it should be accepted as authority. The Ohio case does not sustain appellant's proposition. We have been unable to procure the Michigan case.

Whatever may be the attitude of Missouri courts on the question of expert testimony, it has been fully settled in this State that the opinion of experts, given under like circumstances as the opinions were given in this case, are admissible. (Scalf v. Collin County, 80 Texas, 514; Galveston, H. & H. Ry. v. Bohan (Texas Civ. App.), 47 S. W. Rep., 1050; Missouri, K. & T. Ry. v. Hawk (Texas Civ. App.), 69 S. W. Rep., 1037; International & G. N. Ry. v. Mills (Texas Civ. App.), 78 S. W. Rep., 11.) In the last named case the question was fully discussed by this court and decided adversely to the contention of appellant. That decision, as well as the one in the Bohan case met with the approval of the Supreme Court.

Appellee, in answer to a question propounded to him by his counsel, stated that he could have done nothing to prevent the injury, and appellant objected to the question and answer which the court overruled, but appellee's attorney requested that the answer be withdrawn from the jury and the court said: "I will take it from the jury. Gentlemen,

you will not consider that question, and especially that answer of the witness for any purpose whatever. You are not to consider it at all, but dismiss it from your minds." Appellant has no just cause of complaint. While it is not a good practice to admit evidence and then rule it out, it is the rule that under such circumstances a reversal will not follow, although there might be exceptions to the rule. As said in Church v. Waggoner, 78 Texas, 200: "Having been improperly admitted, it was proper for the court to repair the wrong by directing the jury not to consider it. There must be strong reason to believe that the improper admission of the evidence has caused a wrong to be done to the objecting party, which has not been remedied by the attempt to do so, before it would be proper for us to reverse the judgment for such a reason."

As stated by appellant in its brief, one of the material issues of the case was whether the locomotive was moving too fast when the coupling was made, and who of all others could know this better than the engineer who had charge of it. He qualified himself as an expert, and it was proper to allow him to enlighten the jury on the subject. However, the witness did not admit that he was going too fast when he struck the cars, and his answer could not have injured appellant.

The court did not err in authorizing the jury to find for damages for mental suffering, although there was no direct proof on that subject. It was shown that appellee had been caused great physical suffering by his permanent injuries and in such cases mental suffering may be inferred. (Texas & Pac. Ry. v. Curry, 64 Texas, 85; Brown v. Sullivan, 71 Texas, 470.) All the damages were made to rest on the contingency of having arisen from the injuries he sustained through the negligence of appellant. The fourth paragraph of the charge should be construed together with the first paragraph, and when so construed it is clear that the jury could not have been led to believe that they could find for any damages except those proximately resulting from the negligence of appellant.

There is no merit in the criticism of that portion of the charge that informed the jury that they could not find for appellee without believing, among other things, that he "was not guilty of contributory negligence and did not assume the risk." The effect of the charge was to inform the jury that appellee could not recover if he had assumed the risk or had been guilty of contributory negligence because it told them that appellee could not recover unless he "was not guilty of contributory negligence and did not assume the risk." The language is so plain and unequivocal "that he who runs may read" and understand.

There was a sharp conflict in the evidence as to the extent of the injuries inflicted upon appellee, some of the physicians testifying that the injuries were trifling and insignificant and others that they were serious and permanent. This is a state of facts that is very common in personal injury suits, and such contradictions give rise to a condition of affairs in which is brought into activity that peculiar and exclusive prerogative conferred upon juries of passing upon the credibility of witnesses and the weight to be given to the evidence. If the evidence offered by appellee is true, and it was so found by the jury, appellee has been so injured in his knee that he will never be able to perform the

labor for which he had trained himself, and has sustained a terrible shock to his nervous system, and has suffered great bodily and mental pain. We see no evidence of passion or prejudice in a verdict for eight thousand dollars. The judgment is affirmed.

*Affirmed.*

Writ of error refused.