## ST. LOUIS, S. F. & T. RY. CO. v. OVERTURF.

(Court of Civil Appeals of Texas. Dallas. Jan. 24, 1914. Rehearing Denied Feb. 14, 1914.)

1. TRIAL (§ 203*)—INSTRUCTIONS—FORM, REQUISITES, AND SUFFICIENCY.

Defendant is entitled to have affirmatively presented to the jury any specified group of facts developed upon the trial, which, if true, would in law be a defense to the action.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 477–479; Dec. Dig. § 203.*]

2. TRIAL (§ 260*)—REQUESTS — INSTRUCTIONS ALREADY GIVEN.

In an action by a boiler maker's helper for an injury caused by his attempting to step from the cab of the engine to the tender after it had been removed by other employés, defendant's request that when plaintiff entered its service he assumed the risks incident to the work, and if it was the custom to disconnect the tender without notifying employés in the fire box of the engine, then plaintiff could not recover was properly refused because sufficiently covered by that part of the main charge which charged that, if it was the custom to notify such employés when moving the tender, then to find for plaintiff, but, on the other hand, it was not the custom, then to find for defendant; this being a sufficient affirmative presentation of the facts to satisfy the rule that defendant is entitled to an affirmative

---

presentation of any group of facts in evidence which would be a defense.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

3. TRIAL (§ 253*) — ACTION FOR INJURY TO SERVANT—INSTRUCTIONS IGNORING ISSUES.

Where, in an action by a boiler maker's helper for an injury caused by him attempting to step from the cab of the engine to the tender after it had been moved by other employés, the issue was as to whether it was the custom to notify workmen in the fire box of the removal of the tender, the court properly refused defendant's request that even though its employés did sometimes notify those inside the fire box, but it frequently occurred that the tender was removed without such notice, then plaintiff assumed the risk of such custom, since the request ignored the issue as made.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*]

4. EVIDENCE (§ 528*)—ACTION FOR INJURY TO SERVANT—ADMISSIBILITY OF EVIDENCE—NATURE AND CAUSE OF INJURY.

In an action for injury to a servant, physicians who had examined the injury were properly permitted to testify whether in their opinion the injury was such as would result or be caused by the accident.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2335–2337; Dec. Dig. § 528.*]

5. DAMAGES (§ 131*)—ACTION FOR INJURY TO SERVANT.

Where, in an action for an injury to an employé, the evidence showed that two of his ribs were broken and his back and spine injured, that he was confined to his bed five or six weeks, suffered much, and had been unable to perform any labor, a verdict for $750 was not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 357–367, 370; Dec. Dig. § 131.*]

Appeal from District Court, Grayson County; W. M. Peck, Judge.

Action by W. F. Overturf against the St. Louis, San Francisco & Texas Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Head, Smith, Maxey & Head, of Sherman, for appellant. C. Huggins and McReynolds & Hay, all of Sherman, for appellee.

RASBURY, J. Appellee sued for damages for personal injuries alleged to have been received by him while performing his duties as boiler maker's helper for appellant, and upon trial recovered verdict followed by judgment for $750, from which this appeal is taken.

The ground of negligence urged against appellant was the detaching of the tender from an engine in the fire box of which appellee was at work at the time of the accident; it being further alleged that it was appellant's custom to notify those at work in the fire box that the tender had been or would be detached. The facts hereafter stated will disclose what relation the detaching of the tender from the engine bore to appellee's injuries, and for that reason a further statement of appellee's pleading is unnecessary.

Appellant met the allegations of the petition by the general denial, plea charging contributory negligence, and the further plea that appellee assumed the risk of the accident which brought about his injuries in that it was usual and customary to remove tenders from engines while its employés were engaged in the work in which appellee was engaged at the time he was injured, without giving notice to employés engaged at work in the fire box of the engine, and that appellee knew there was no rule requiring such notice, and that it was the usual custom to remove tenders without notice.

The record of the evidence sustains the following essential facts: Appellee was in the employ of appellant in the capacity of boiler maker's helper. On December 18, 1911, he assisted a boiler maker to do some work in the fire box of the engine upon which he was injured. When he went into the fire box of the engine, a tender was uncoupled thereto, and he entered upon the engine and into the fire box by going up the steps on the tender, crossing from the tender to the cab of the engine on an apron which was fastened to the cab of the engine by hinges and rested over on the tender, the purpose of which was to furnish a walk way for parties passing from the tender to the cab of the engine, which was the usual and customary way of getting on the engine, and thence into the fire box. The usual way for employés working on the engine to leave it was to pass from the deck of the engine over the apron between the engine and tender and thence down the steps on the tender. There was, at the time appellee entered the fire box, a storm curtain fastened at the top of the engine cab which extended down and reached within two or three inches of the floor of the engine cab at the outer edge thereof between the engine cab and tender. The engine was standing over a concrete pit some two or three feet deep below the rails upon which it was standing; the floor of the cab being some 7 or 8 feet above the rails, making the bottom of the pit 10 or 11 feet below the floor of the cab of the engine. During the time appellee was in the fire box at his work, members of what was known as the tank gang uncoupled the tender from the engine and by use of pinch bars moved the tender some seven or eight feet back from the engine. Having finished his work about noon, appellee came out of the fire box of the engine, where he was at work, onto the cab of the engine, and assuming the tender was yet coupled thereto, and intending to walk across the apron onto the tender and down the steps thereof, stepped from the cab of the engine and fell into the pit below.

The evidence was conflicting on the issue of whether there was a rule requiring notice to be given of the intention to move the tender as detailed and as to whether it was usual and customary to move it without notice.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

There is testimony in the record sufficient to sustain a finding by the jury either way. There was also a conflict in the testimony relating to the extent of appellee's injury, but the evidence in that behalf will in like manner support the finding of the jury.

[1, 2] The first assignment of error complains of the refusal of the court to allow appellant's requested charge by which the jury was instructed that, when appellee entered the service of appellant, he assumed the risks of the manner in which appellant usually and customarily performed its work, and, if it was the usual and customary method and practice of appellant's employés to disconnect and move the tender of an engine away without notifying any other employés engaged at work in the fire box of the engine that they had done so, to find for appellant. The only issue of negligence presented to the jury upon trial and raised by the evidence was that of removing the tender from the engine and being the identical issue presented by the charge refused by the court. It has been repeatedly held and is now settled law that the defendant is entitled to have presented to the jury any specified group of facts developed upon trial, which, if true, would in law establish a given defense, provided, of course, that such requested charge is not substantially covered by the main charge or other allowed special charges. G., C. & S. F. R. Co. v. Shieder, 88 Tex. 152, 30 S. W. 902, 28 L. R. A. 538; M., K. & T. Ry. Co. v. McGlamory, 89 Tex. 635, 35 S. W. 1058; M., K. & T. Ry. Co. v. Rogers, 91 Tex. 52, 40 S. W. 956; Dallas Consolidated St. Ry. Co. v. McGrew, 115 S. W. 344.

The rule being as we have stated, our duty necessarily narrows to ascertaining whether the court in its main charge substantially complied with the rule involved by the refused special charge. We conclude it did. The court in its main charge, after defining negligence, ordinary care, and contributory negligence, told the jury that: "When plaintiff entered the service of the defendant in the capacity of boiler maker's helper, he assumed all the risks or danger ordinarily incident to such employment, except that he did not assume any risks or danger, if any, arising from the negligence of defendant, its agents or employés, unless he knew at the time of such negligence, if any, and appreciated the danger therefrom, or in the ordinary performance of the duties of his employment must necessarily have known of such negligence and the danger incident thereto." Then came the instruction in the charge that appellant was bound to exercise only ordinary care to prevent injury to its employés, and then only in case the employé exercised ordinary care for his own safety. Following this, the only issue of negligence, as we have said, which was raised by the evidence was submitted to the jury from the standpoint of appellee's evidence, wherein the jury were instructed that if they believed from the evidence "that it was the custom of defendant, while its employés were working in and about said engine, if it became necessary to move the tender therefrom, * * * to notify the employés engaged in working in and about the engine that such tender would be removed," to find for appellee. After such instruction the court then proceeds: "On the other hand, * * * if you believe from the evidence that it was not the custom for the defendant or its employés to notify employés working in and about the engine that the tender was going to be moved * * * then you will find for the defendant." As indicated by the asterisks, this issue was submitted along with others of appellant's defenses in the seventh paragraph of the court's charge in the same manner that appellee's side of the case was presented in the sixth paragraph. Thus it clearly appears that the fact constituting the defense which, if true and accepted so by the jury, would in law establish the defense of assumed risk was before the jury for whatever it was worth. If before the jury, was it affirmatively presented? We think it was. Because, as we understand the rule, it comprehends but two elements, one the grouping, either in the main charge or in special charges, the fact or facts constituting the particular defense and its affirmative presentation to the jury. The refused charge tells the jury, if it was the custom to detach the tender from the engine without notifying those engaged at work in the fire box, to find for appellant. The court charge tells the jury, if it was the custom to notify those at work in the fire box of the removal of the tender, to find for appellee; but, on the other hand, if it was not the custom to notify them, to find for appellant. We are unable to see how the manner of putting the issue could be otherwise and an orderly observance of the burdens cast upon each party to the suit be maintained. The complaint must precede the defense, and when the complaint is that the injury resulted from the violation of a custom to notify those inside the engine that the tender would be removed, and defendant asserts that it was not the rule to notify those inside, but to remove the tender without notice, and the jury is instructed, if no such custom existed, to find for the defendant, is equivalent to saying they should find for defendant if it was the custom to detach such tenders without notice to those inside the fire box.

[3] The second assignment of error complains of the refusal of the court to give appellant's special charge instructing the jury that even though appellant's employés did sometimes notify those inside the fire box of their intention to detach the tender, but it frequently occurred while appellee was in the employ of appellant that the tender was removed without the notice, then appellant assumed the risk of such custom. This special charge of appellant, in our opinion, was

properly refused. Appellee's pleading charged the existence of a custom by which employés in the fire box were notified of the detaching of the tender. Appellant's answer denied the existence of the custom and alleged the custom to be to detach without notice. Testimony was introduced to support the allegations of both parties. To have given the requested charge would, in our opinion, have ignored the issue as cast in the case, and in the final analysis would have been to instruct the jury that appellee assumed appellant's negligence, since under appellee's pleading and evidence the failure "sometimes" to give the notice was the very act of negligence complained of, while by appellant's pleading it was not negligence for the reason it was customary to do so, and, being customary, was a risk assumed by appellee. Further, the charge would in effect tell the jury if appellant was at times negligent, and appellee knew it, he assumed the risk of such occasional acts of negligence.

The third assignment of error complains of the refusal of the court to allow appellant's special instruction presenting the issue of assumed risk differing to some extent with the charge discussed under the first assignment. For the reason that we think that issue was correctly presented in the court's main charge, said assignment is overruled.

[4] The fourth assignment complains of the admission of the testimony of physicians who were testifying as experts. Drs. W. C. and J. A. Rutledge testified that they examined appellee about 15 days after his injury and found two of his ribs fractured, his back swollen and tender and sensitive to the touch along the spine in the lumbar region. At this point counsel for appellee detailed the manner in which appellee from the tender, striking the draw bar of the engine tender, falling some 10 or 12 feet below upon the concrete foundation of the pit, and asked the witnesses to state whether such fall would or would not be calculated to produce the injuries he found when he examined him subsequent to the fall. Over the objection of appellant properly preserved, the witnesses answered it would. To Dr. J. F. Jones, a witness for appellant, counsel for appellee propounded on cross-examination in substance the same question and secured the same answer. This witness did not examine the appellee until the day before the trial, at which time he did not find any evidence of the injuries complained of by appellee. The answer to the question propounded, however, was that the fall as detailed would be calculated to produce the injuries which appellee claimed to have received. To the same effect was the testimony of Dr. J. O. Matthews, also a witness for appellant. The contention is that the foregoing testimony is irrelevant, immaterial, calls for the opinion and conclusion of the witnesses upon a matter not the

subject of expert testimony, is problematical, remote, and an invasion of the province of the jury. The rule contended for by appellant has been decided adversely to it. In Texas Central Ry. Co. v. Burnett, 80 Tex. 536, 16 S. W. 320, it is said: "The first and fourth assignments of error present the question whether the court erred in permitting physicians who knew the condition of Mrs. Burnett to give their opinions as to whether her injuries were such as would likely result from such a concussion as was shown, and the court correctly received their evidence." To the same effect is Wheeler v. Tyler Southeastern Ry. Co., 91 Tex. 356, 41 S. W. 876; G., H. & S. A. Ry. Co. v. Cherry, 44 Tex. Civ. App. 344, 98 S. W. 898; G., H. & S. A. Ry. Co. v. Henefy, 115 S. W. 57, and cases cited.

[5] The fifth assignment of error complains of the refusal of the trial court to grant a new trial, because of the excessiveness of the verdict. The amount of the verdict is $750, and the point made is that it is excessive, considering the extent of appellee's injuries. Appellee testified that as a result of the fall it broke two of his ribs and injured his back and spine; that he was confined to his bed five or six weeks, and suffered much pain, and that after getting out of bed was unable to perform any labor or earn money; and that at the time of trial his back was causing him considerable trouble. Dr. Rutledge, who attended appellee, testified that when he began treating him after the accident two of his ribs were fractured and the muscles of his back rigid and swollen, and that he was wholly disabled from performing any character of physical labor for perhaps six months. This is the testimony of appellee, which is tendered to support the verdict. Considering the elements that go to make up recoverable actual damages, we conclude that the evidence well sustains the amount of the verdict, and that we are not authorized, in view of the narrow and circumscribed prerogative we have in such cases, to say the verdict is excessive.

We conclude that the record presents no reversible errors, and the judgment is therefore affirmed.