### TEXAS–MEXICAN RY. CO. v. CREEK-MORE. (No. 6045.)

(Court of Civil Appeals of Texas. San Antonio. June 5, 1918. Rehearing Denied June 24, 1918.)

1. EVIDENCE ⬤⇒528(2)—ADMISSIBILITY.

The physician in charge of case, who had known plaintiff prior to the injury, was properly permitted to testify, "I found him complaining of some pain and inability to do his work without tiring him," and "confinement was due solely to the injury to his back."

2. EVIDENCE ⬤⇒509—BODILY CONDITION.

Where it was undisputed plaintiff was injured in a certain wreck, and that muscles were torn loose from the spinal column, admission of testimony by a witness that on plaintiff's arrival after the wreck he was suffering from an injury to his back, which he claimed to have received that evening in a railroad accident, and that he was suffering to such an extent that he did not walk about, etc., was not reversible error.

3. APPEAL AND ERROR ⬤⇒230—MATTERS REVIEWABLE—SAVING OBJECTIONS.

Objections to rulings made for first time on motion for new trial cannot be reviewed on appeal.

4. DAMAGES ⬤⇒131(1)—PERSONAL INJURIES—PERMANENT INJURIES—INJURIES TO SPINE AND NERVOUS SYSTEM.

Six thousand dollars damages was not excessive for mail clerk, whose muscles were torn loose from the spinal column.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Suit by R. H. Creekmore against the Texas Mexican Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Asher R. Smith, of Laredo, and Hicks, Phelps, Dickson & Bobbitt, of San Antonio, for appellant. John C. Scott and Dawson & Anderson, all of Corpus Christi, for appellee.

SWEARINGEN, J. R. H. Creekmore, the appellee, brought this suit against the Texas-Mexican Railway Company, appellant, to recover damages for personal injuries caused by derailment of appellant's train, in which appellee was performing his duties as railway mail clerk. A general charge was sub-

mitted to a jury, which returned a general verdict in favor of appellee for the sum of $6,000.

The first amended petition alleges that appellee, a postal clerk, while riding in the mail car provided for railway postal clerks, and while attending to the duties of his employment, a part of appellant's train, including the mail car, was derailed, from which derailment—

"the plaintiff received and sustained serious and permanent internal and external injuries. He was thereby seriously and permanently injured in the back and in and near his spinal column, and the muscles and tendons in his back and on and near the sides of his spinal column were permanently injured, and the muscular attachments were torn loose from the side of his spine, and a depression was made on one side of the spine. Plaintiff was confined for a long time to a bed of sickness, and he still suffers, and during the remainder of his life will continue to suffer, sickness, physical pain, weakness, and inconvenience. He has been permanently weakened in his physical and nervous strength, and his power of locomotion has been permanently damaged and injured, and the use and strength of his right arm and right leg have been permanently impaired. His nervous system has been permanently damaged and weakened, and he cannot sleep well, and at times is subject to nervous attacks, which cause sleeplessness and great physical inconveniences, and it requires, and will always require hereafter, greater effort on his part to discharge his duties as a mail clerk, and he cannot as easily perform such duties as he did before he received said injuries. His physical and nervous strength has been permanently impaired and weakened; and since receiving said injuries he has had to secure competent medical treatment and medicines, and has paid therefor, and same are reasonably worth, about $150, and his health has been permanently impaired, and it will be necessary for him to have medical treatment and attention, on account of said injuries, during the remainder of his life. And plaintiff further shows that on account of said injuries his life will be shortened, and he will not be able to earn money in his usual vocation for as long as he otherwise would have been, and by said injuries he has been actually damaged in the sum of $10,000."

Appellant demurred to the said petition, directed a number of special exceptions against it, and made a general denial of all the allegations. None of the special pleas in the answer are involved in the assignments; hence further mention is useless.

There is evidence to sustain all of the allegations of the said petition, most of it undisputed. In fact, the only controversy is as to the extent of appellee's injuries, appellant insisting they are trivial and the amount allowed by the jury excessive.

[1] The first four assignments complain of the admission in evidence of certain testimony. The first contends that the attending physician should not have been permitted to testify that, "I found him (plaintiff) complaining of some pain and inability to do his work without tiring him," nor to testify that, "I do not remember how long he (plaintiff) was confined to his room at that time (time witness saw plaintiff), but the confinement was due solely to the injury to

---

his back." The objection urged was that the testimony was hearsay and a nonexpert conclusion. The undisputed evidence is that appellant's muscles were torn loose from the backbone by the derailment, and caused him to remain in bed for 12 days and in his house for 45 days. It also shows that the witness was the physician in charge of the case, and had known appellee prior to the injury. The testimony was admissible. Rogers v. Crain, 30 Tex. 284; Railway Co. v. Harriett, 80 Tex. 73, 15 S. W. 556; Railway Co. v. Burnett, 80 Tex. 536, 16 S. W. 320; Railway Co. v. McElmurry, 33 S. W. 249; Railway Co. v. Brown, 16 Tex. Civ. App. 93, 107 et seq., 40 S. W. 608; Railway Co. v. Wright, 19 Tex. Civ. App. 47, 47 S. W. 56; Railway Co. v. Williams, 26 Tex. Civ. App. 153, 62 S. W. 808; Railway Co. v. Hawk, 30 Tex. Civ. App. 142, 69 S. W. 1037; Railway Co. v. Moore, 31 Tex. Civ. App. 371, 72 S. W. 226; McGrew v. Railway Co., 32 Tex. Civ. App. 265, 74 S. W. 816; Hickey v. Railway Co., 95 S. W. 763; Telegraph Co. v. Stubbs, 43 Tex. Civ. App. 132, 94 S. W. 1083; Railway Co. v. Cherry, 44 Tex. Civ. App. 344, 98 S. W. 898; Railway Co. v. Stoy, 44 Tex. Civ. App. 448, 99 S. W. 135; Railway Co. v. Abbott, 146 S. W. 1078; Railway Co. v. Overturf, 163 S. W. 639; Railway Co. v. Brown, 163 S. W. 383; Railway Co. v. Roemer, 173 S. W. 229.

[2] The second and third assignments contend that the witness Twiss should not have been permitted to testify:

"On plaintiff's arrival at the post office building in Laredo he was suffering from an injury to his back, which he claimed to have received that evening in a railroad accident, and his suffering was so severe that he was unable to move about." "He was suffering to such an extent that he did not walk about at any time." "He was unable to take care of himself and required assistance." "He (plaintiff) was suffering from the alleged injuries to his back. The pain was located in his back."

The objection was that the testimony was a mere conclusion of the witness. Under the facts of this case, the admission of the testimony is not reversible error. Fordyce v. Moore, 22 S. W. 235; Railway Co. v. Reagan, 34 S. W. 796; Railway Co. v. Brown, 30 Tex. Civ. App. 57, 69 S. W. 1010; Railway Co. v. Jones, 39 Tex. Civ. App. 480, 88 S. W. 445; McCabe v. Traction Co., 39 Tex. Civ. App. 614, 88 S. W. 387; Traction Co. v. Flory, 45 Tex. Civ. App. 233, 100 S. W. 200; Railway Co. v. Schuler, 46 Tex. Civ. App. 356, 102 S. W. 783; Railway Co. v. Clippenger, 47 Tex. Civ. App. 510, 106 S. W. 155; Railway Co. v. Hibbitts, 49 Tex. Civ. App. 419, 109 S. W. 228; Cunningham v. Neal, 49 Tex. Civ. App. 613, 109 S. W. 455; Ins. Co. v. Wagner, 50 Tex. Civ. App. 233, 109 S. W. 1120; Railway Co. v. Sandlin, 57 Tex. Civ. App. 151, 122 S. W. 60; Railway Co. v. Morrison, 129 S. W. 1159; Railway Co. v. Dellmon, 171 S. W. 799; Yeatts

v. Railway Co., 184 S. W. 636; Traction Co. v. Nicholson, 188 S. W. 1028.

The first four assignments are all overruled.

[3] The fifth and sixth assignments present objections to that portion of the court's general charge which enumerates what the jury can take into consideration in estimating the amount of damages. None of the objections urged in this assignment were made in the trial court before the charge was read to the jury. Neither were the objections here urged presented to opposing counsel prior to submission to the jury. But the objections were first made after the trial of the cause, when set out in the motion for new trial. Under these circumstances, we are not permitted to review the contention. The fifth and sixth assignments are overruled. G., T. & W. Ry. v. Dickey, 108 Tex. 137, 187 S. W. 189; Railway Co. v. Kjellberg, 201 S. W. 1032; Railway Co. v. Frank, 177 S. W. 168; Crum v. Thomason, 181 S. W. 803.

The seventh and eighth assignments assail the judgment for excessive amount.

[4] In deference to the verdict and judgment, we feel bound to consider the injury, its nature, duration, and effect, to be proven by the testimony of appellee himself and his witnesses, particularly the two physicians who treated him. Dr. Yeager testified that he had attended appellee in the capacity of a physician, and said:

"He was injured down the side of the spine, on the left side, I think. He had been injured in the back near the spinal column. The muscles and tendons were affected by the injury, by the tearing aloose of the muscular attachments. They failed to give the support to his back that they should. The muscles and tendons at or near the region of the spinal column were lacerated and torn, to the extent that they didn't give the support that they should, and on inspection the muscles on the injured side of the back were not as prominent as on the other side. The nervous system of R. H. Creekmore was affected and injured by the injuries; it has aged him, and he hasn't the vitality he had before. * * * A man would suffer pain in the region of the back when the muscles were torn aloose. The effect would be to weaken him physically, and also from a nervous standpoint. The effect on his nervous system would be that it would not be as stable, and as to his power of locomotion, to a small extent it would hinder his locomotion, and he wouldn't be sure of himself. * * * I believe his injuries permanent. The muscles and tendons at or near his spinal column in the small of the back had been injured at the time I made such subsequent examinations. They looked as though they were torn away from their attachments. The muscles in the small of the back, at or near the spinal column, had been torn loose. On inspection that side looked three-quarters of an inch lower than the other side where the muscles were attached. I believe there is a permanent injury to those muscles."

Dr. Painter, another attending physician, testified:

"I have examined Mr. Creekmore myself a few times, when I stripped him and put strips on his back. The purpose of putting those strips on his back was they splinted the muscles. I mean by that, if you have a broken bone you

put a splint on it, and if you have a strained muscle you put a strapping on—they are exactly like a board on a broken bone, to give the muscle complete rest and support—as complete rest and support as possible. * * * The erector spinæ is the muscle that runs all the length of the backbone, on either side of the backbone. There are two of them that run the whole length of the backbone, and are attached to the backbone all the way along, attached by tendons, just like muscles are attached to bones. Those two muscles on each side of the backbone are important parts of a man's anatomy. A man couldn't ever do business without the whole muscle; a man can go about and perform all the different functions to some extent with one of the two divisions of the muscle injured, but not without the erector spinæ muscle, as that muscle holds the body erect, holds the backbone straight, and holds the back that way (indicating); makes the backbone straight. * * * A patient under that condition would be able to walk, and probably would be able to use his arms, but he wouldn't be able to bend forward, backward, or sideways. As well as I remember, it was the left side of Mr. Creekmore's back that was injured—in the lumbar region, we call it. I would point it out to you if you would have him come around here. This depression isn't as well marked as when I first examined it, but this muscle on this side isn't as full in flesh as it is on that side. Here is where the depression was, just about the lumbar region, right along here. Normally, that side on the left is as high as it is on the right; there, in his back now, you can see that it isn't—that's perceptible to me. That depression on the left-hand side there is not a natural condition. That muscle has been injured some-time, somewhere, somehow. You cannot feel the injury, specially, now; you can feel the depression there, on the left-hand side of the backbone. Now these muscles, all the muscles in the body, in a right-handed person are a little more developed than the muscles on the left-hand side."

The appellee testified:

"It was a very severe pain, very acute, just like you drove something in there. When I undertook to move it caused that pain. Also had a little hurting in my shoulder, and my head felt sore, like it had had a stroke or lick. I remained in the post office in Laredo but a few minutes, no longer than I could get help to change my clothes. I couldn't change my clothes myself; couldn't lift my right foot off the floor; it caused this pain—made it so severe that I couldn't do it—right here at the left-hand side of my spine, a severe pain. It was a dull, heavy pain, and then when I would go to move it would be a sharp pain, but a dull heavy pain all the time, continuously. I walked to the Hamilton Hotel with the assistance of John Twiss and this Mexican they called Benavides; don't think I could walk without their assistance; I didn't try it, but don't believe I could. When I got to the hotel I went to my room; stayed there that night. Mr. Twiss was with me after I got a physician, and he gave me some opiate to dull the pain. I can't think of the name of the physician right now. He said he gave me some opiate to take that night and the next morning, and a plaster on my back so I could manage to get home. We left Laredo the next day about 8 o'clock, I think. We came to Corpus that day. I did not come alone; brought Victor Garza along to look after the mail. I wasn't able to do it myself; wasn't able to stand up. I had pain all the time the next day. Of course it wasn't as acute as it was the evening before on account of the medicine the doctor gave me to dull the pain. * * * I didn't go out any that night, and I was at my house 45 days before I went out on the road again. I was suffering from that in-

jury; that's the reason I didn't get out. I was confined in bed from that injury about 10 or 12 days, and during that time I suffered pain all the time, dull, heavy pain, in the left-hand side, right here to the left of the spine, in the left-hand side. By spine I mean the backbone; that's where the main pain was. It was 45 days before I got out to work again, and I have been on that run ever since. I had a physician attend me here, Dr. Yeager. He attended me continuously until I went back on the road, and months afterwards. Before I received those injuries I was a strong, healthy man. I did not use a walking cane. I have been walking with a stick just since I got up after I was injured, and now I use it continuously because I can't get along without it. I can't step up on a sidewalk or on a step, or down, without the use of it. As to the condition of my right arm and right leg now as compared to the condition they were in before I got hurt, I can't use either of them like I could before I got hurt, and I can't use either of them unless I use them very carefully, without pain. I haven't got the same strength in them now that I had before I got hurt. Sometimes I can use the right hand a little while in walking with the stick, and then it begins to pain me, and I have got to change it to my left hand. As to my nervous condition since this accident happened, I am almost a nervous wreck. I can't sleep lots of times for hours. I was not in that condition before I got hurt. In regard to sleeping, I have to change my position often, never longer than an hour and a half. I have nervous attacks, and the effect of those is that they keep me awake as long as I am in that condition, and sometimes I have two or three spells in one night, sometimes only one. I take medicine for it, a prescription given me by the doctor. He told me it contained strychnine. I did not have any of these nervous attacks before I was hurt. There is a depression on one side of my spinal column, the left-hand side of my backbone; it's about five or six inches long. There is a depression there that you can lay your thumb or finger in about five inches long, right along the backbone. That was not there before I got hurt, but it has remained there ever since I got hurt. I have been under the same treatment that the doctor prescribed when he first came to see me, ever since. I use adhesive plasters to brace me up here (indicating) —my back. My back is weak."

From all the foregoing, we are unable to say that the sum of $6,000 for damages, allowed by the verdict and judgment, is excessive and the result of passion or prejudice.

We overrule the seventh and eighth assignments.

The judgment is affirmed.